WILLIAMS'S EX'TS. vs. THE MAYOR, &c. of ANNAPOLIS.

1825.
JUNE.

W^m Iams
vs
Mayor, &c

APPEAL from a decree of the court of chancery. The bill was filed against the testator of the defendants, (now appellants,) on the 23d of November 1815, to compel him to take from the complainants, (now appellees,) a lease for a lot of ground in the city of *Annapolis*, which in 1785 they contracted to lease to the original defendant; and also to compel him to pay rent for the said lot. *Williams*, pending the suit, died, and a bill of revivor was filed against his executors. The statement in the bill is, that the city of *Annapolis* heretofore was seized and possessed of a number of lots in said city, and being anxious to lease out the same, *Williams* applied to the *Mayor*, &c. to lease, and on the 29th of September 1785, a lease was executed to *Williams* for certain property, particularly described in said lease, for 99 years renewable for ever, commencing on the 15th of April then past, paying the annual rent of £56 5 0. *Williams* entered upon the premises described in said lease, and ever since has used, occupied, and enjoyed the same, and still does, and paid the rent to the 15th of April 1803. After that time he neglected or refused to pay rent, and for recovery of it suit was instituted in *Anne Arundel* county court, to April term 1812. The lease was not acknowledged or recorded in the manner or *place* required by law, and *Williams, although he held the premises leased, or intended to be leased, under the said lease,* and paid the rent as aforesaid, took advantage of the legal defects in the lease, and the county court, upon an admission of facts, gave judgment in favour of *Williams*, in 1815. Besides being required to account and pay over the amount of said rents, and that a new lease may be executed, he was called on to answer, among other things, whether he did not make the agreement, and execute the lease referred to; *whether he did not enter upon the premises by virtue thereof;* and whether he did not still hold the same. The answer of *Williams* states, that he does not admit that the *Mayor*, &c. of the city of *Annapolis*, were seized and possessed of a number of lots, and *especially denies all title in the said corporation to the lots which they pretended to lease to him, and leaves it to the complainants to establish their title thereto.* He alleges that this lot, a part of five and a half acres of vacant land, was taken up by *Patrick Creigh* on the 6th of Fe-

W, in 1785, leased from M & A. for 99 years, renewable for ever, a lot of ground at a fixed rent, and covenanted in the lease to pay the rent. He entered upon the property, and paid the rent until 1803. The lease was not legally acknowledged or recorded. In 1812, M & A brought an action of covenant at law against W to recover the rent, and failed, because of the defective execution and acknowledgment of the lease. W, and those claiming under him, remained in undisturbed possession of the property. In 1815, M & A filed their bill in chancery against W, to compel him to account for the rents from 1803, and to accept a new lease formally executed. W afterwards died, and the suit was revived against his executors—Held, that the complainants were entitled to recover the rents, with interest, and that neither the judgment at law, nor the statute of limitations, could affect their claim. But that the executors of W were not bound to accept a new lease

bruary 1748, and from the time of the grant thereof has been in the quiet possession of the grantee, his heirs or assigns. The title to this land became vested in *Richard Mackubin*, of whom the defendant purchased, and to whom he gave an extravagant price, and has expended considerable sums of money in its improvement. After this purchase and these improvements, the corporation set up a claim to the ground, and the defendant, being unwilling to be disturbed in his improvements, entered into a contract with them to lease the same. He afterwards became satisfied that they had no title to the property, and then refused to pay any rent, and would have applied to the court of chancery to vacate the contract, but it was discovered to be void. He admits the suit at law, and the decision in his favour, but he is advised that the court did not decide that nothing could be recovered at law from the defendant for the use and occupation; and he is advised, if the complainants could have proved that the defendant occupied the lot *as the tenant and by permission of complainants,* they must have recovered at law in a proper form of action, *and the defendant* could only have been relieved in equity. *He insists that the relief sought by the complainants, if they are entitled to any, is exclusively at law; and he pleads and relies upon the judgment at law, and the act of limitations.* He expressly denies that he entered on the premises in virtue of the lease; that he claims the fee simple, and again denies all title which the complainants may set up. The complainants exhibited the proceedings in two suits in chancery, *John Welch* against *Benjamin Welch* and *James Williams,* and *Robert Welch* against *James Williams* and *John Ross.* These suits have no relation to the present, and can only be introduced into the case because of a part of the answer of *James Williams* in the latter suit; in which he states, "that some time in the year 1785, there being a dispute between *Richard Mackubin* and the corporation of the city of *Annapolis, as to the right of some water lots,* this defendant wished to purchase, and in order to secure a good title, this defendant had to *purchase or lease* of both parties, for which he paid equal to one dollar per foot per annum." Testimony was taken, and surveys were made, &c. An application was made to the chancellor by the complainants, to order the defendant to produce the original lease, which order being granted, the original lease was

produced by the defendant, certified to have been recorded in the records of the general court, on the 3d of January 1786.

JOHNSON, Chancellor, (July term 1822.) It being understood, that this cause, let the final decree be as it may, is to go to the court of appeals, for the ultimate determination of that tribunal, it is thought most advisable, before a determination is made on the merits of the cause, to direct, that the sum due to the corporation, (if it is entitled to recover,) should be ascertained; that the decree, when made, on the merits of the cause, should be final, so far as regards this court. For if the complainants re entitled to recover, then the decree would be for a specific sum; and on the appeal, the court of appeals would have the whole subject before them; that is, the right to recover, and the extent of the recovery. If the decree, after the account is made by the auditor, is in favour of the defendants, then on an appeal should the decree be reversed, the court of appeals would have every thing before them, to enable that court to give a final decree.—*Decreed*, that the auditor state an account between the parties, so as to ascertain the sum due from *James Williams*, deceased, on account of the property leased to him by the corporation of the city of *Annapolis* on the 29th of September 1785, from the evidence in the cause, or from such evidence as shall be laid before him, and report the same, subject to further order, reserving all equity at the final hearing.

The auditor, by his report, stated that there was due from *Williams* to the complainants the sum of $4,495 87½, with interest on $2,850, a part thereof, from the 30th of November 1822. To this report the defendants made sundry exceptions.

JOHNSON, Chancellor, (March term 1823.) On the 29th of September 1785, the complainants leased to *James Williams* a lot of ground, situated in the city of *Annapolis*, for the term of ninety-nine years renewable for ever, on the annual rent of £36 5s. current money; the lease contains the usual covenants, amongst which is the covenant for the payment of the rent; the lease is under the seal of the corporation, and is also signed and sealed by *James Williams*, but it was not acknowledged and recorded agreeably to

law. *Williams* entered on the lot, and paid the rents up to the 15th of April 1803, when discovering (as it is presumed,) the defective execution of the lease, from that time he refused to pay; and on the 10th of March 1812, an action of covenant was brought against him by the corporation, in *Anne Arundel* county court, to recover the rents then claimed as due. The cause was tried on a case stated, in which it is admitted that the lease was executed "in the manner stated in and endorsed upon the aforesaid copy of the said lease, and the original lease recorded in the manner endorsed upon the aforesaid copy, and that the said lease never has been executed, acknowledged or recorded, otherwise than as appears upon the copy of the said lease filed in this cause by the plaintiffs." The copy of the record of *Anne Arundel* county court is filed as an exhibit in this cause, and by it, it also is admitted, that *Williams* "entered upon the said property, and the rent for seven years has been unpaid." Judgment on the case stated was given in favour of the defendant. The reasons for the decision do not appear, but it is to be supposed, the judgment of the court was in favour of the defendant, because the *legal* estate in the property did not pass by the lease.

From the period of the lease, to the present time, *Williams*, and those claiming under him, have had the undisturbed possession. Foiled by the judgment of the court to recover the rents, on account of some legal informality of the lease, on the 23d of November 1815, the present bill was filed against *James Williams*, to compel him to account for and pay the rents then due, and to accept a new lease formally executed. In this bill the entering of *Williams* on the property, and his continuing to occupy and possess the same, is set forth.

On the 18th of May 1816, *James Williams* answered, and by his answer he denies "all title in the said corporation to the lots which they pretended to lease to this defendant." The lots stated to have been leased, the answer asserts, "were a part of five and a half acres of vacant land, not within the plat or survey of the said city; that the same was taken up," and patented to *Patrick Creigh*, about the 16th of February 1748; the title to which, by inheritance, was transmitted to *Richard Mackubin*, from whom the defendant purchased; and after he had

1825.

Williams
vs
Mayor, &c

purchased, finding that the corporation "did pretend to set up a claim to the ground, and this defendant, unwilling to be disturbed or hindered in his improvements, entered into a contract with them for leasing the same." But afterwards, finding that the corporation had no title, he refused to pay rents. The institution of the suit at law, and the judgment on the case stated, are admitted. The defendant insists, if the complainants have any right, the remedy should have been an ejectment for the property, or an action on the case for use and occupation; and he also relies on the act of limitations as a bar to the claim. The defendant, *James Williams*, having answered, died, when a bill of revivor and supplemental bill was filed against the present defendants, *James Williams* and *Lewis Neth*, junior, the executors, who the bill alleges have assets, which is admitted to be true.

As between the landlord and tenant, the title of the former is not to be called in question; if, therefore, the instrument of writing had been formally executed, acknowledged, and recorded, the rents at law could certainly have been recovered, and the tenant would not have been permitted to controvert the title. But as the instrument was informal, and incapable to pass the title of the corporation, (supposing it to exist,) a court of law competent to determine, have decided that the action of covenant could not be sustained. As the complainants failed to give a valid subsisting lease, they come into this court, founding their claim on the contract to lease, and the corresponding engagement to payment, offering to remove all the defects in the title intended to be passed, by executing formally a new lease on the terms of the engagement between the parties, and claiming the payment of the rents due, according to the stipulations of the parties.

One of the most ordinary grounds of the jurisdiction of this court is that of curing the defective execution of contracts, and of compelling the parties, by a decree of the court, specifically to comply with their engagements fairly and *bona fide* executed; and although a partial relief under the contract might be obtained at law, by the recovery of damages for a breach of the contract, yet the party having that remedy was not, and is not deprived of resorting to this tribunal, to carry the whole engagements into full and complete effect. If, therefore, the complainants could

have maintained an action of ejectment to recover the property itself at law, or could there have sustained a suit for use and occupation, it by no means follows as a necessary consequence, that the jurisdiction of this court extends not to give a more ample and full relief to the parties. Had the ejectment been brought and sustained, although by it the complainants might have obtained the possession of the property, yet it would be held subject to the contract, and the possession regained by a decree carrying the contract into complete execution. Had the suit for the use and occupation been brought and sustained, yet the legal title to the property would have remained, at the termination of that cause, as at its commencement; and, (except by the voluntary acts of the parties it should be obviated,) before the legal estate in the property could have been obtained, resort must have been had to an equitable tribunal possessing the jurisdiction, and full and ample power, specifically to carry the contract into execution.

But although this court will carry contracts into execution when *bona fide* made, yet, no person will be compelled to accept a conveyance, and forced to pay a consideration, when the title is clearly not in the person contracting to sell or lease, or when well founded doubts are entertained of its validity. In the case before the court, since the year 1785, when the lease was executed, to the present time, the possession, and undisturbed, has remained, and still remains with the lessee and those claiming under him. The lessee alone, thinks proper to call the title in question, and sets up no other foundation, to impeach the right of the complainants, than was known to him at the time he leased. At the period of his answer to the present bill, it does not appear that he acquired any new information on the subject. In the answer by *Williams* to the present bill he denies "that he entered on the premises by virtue of any lease of the corporation;" and yet in an answer filed by him, on the 22d of May 1806, to a bill filed by *Robert Welch*, touching the same property, and which case is made a part of this cause, he states, "that some time in the year 1785, there being a dispute between Mr. *Richard Mackubin* and the corporation of the city of *Annapolis*, as to the right of some water lots this defendant wished to purchase, and in order to secure a good title, this defendant had to purchase or lease of both parties," thereby admitting all his know-

ledge on the subject, and of course that the possession by him was acquired under the united title. In the case stated for the judgment of the court of law, it is expressly admitted, that *James Williams* leased from the corporation, according to the copy of the lease filed in that case, which corresponds with the original lease itself, filed and admitted in this cause; and that he "entered upon the said property, and that the rent for seven years has been unpaid." These admissions are abundantly sufficient to defeat the ground now assumed in regard to the entry on the property.

I do not perceive the necessity of going into the examination of the title to the property, but, so far as I have examined, I have no reason to doubt that it belonged to the corporation; but as *James Williams* leased from them, with a perfect knowledge of all the circumstances connected with it, equally as well then as at the time he answered the present bill, and as he and those claiming under him have remained, and still remain undisturbed and unmolested, the raising of doubts now in regard to the title, ought not, it appears to me, to prevent the contract from being enforced.

In order that the whole case might at once be presented to the court of appeals, where it is only to terminate, let the decree of this court be as it may, I thought it advisable on the 2d of September 1822, to pass an interlocutory decree; and on the 20th of November 1822, the auditor in pursuance thereof made his report, by which the complainants appear to be entitled to the sum of $4495 87½ on that day, with interest on $2850, part thereof, from the same time; and as the defendants, the executors, admit assets— *Decreed* that the defendants pay to the complainants, or bring into this court to be paid to them, the said sum of $4495 87½ with interest on $2850, a part thereof, from the 20th of November 1822, until paid or brought in, together with the costs of this suit.

As the original lessee is now dead, a new lease to him cannot be decreed, nor can it be conceived, that his executors ought to be compelled to accept one. But, on the payment of the money above mentioned—*Decreed* further, that in the event of the executors claiming a lease, that the complainants, before the money paid into court is received by them, shall in due form of law, duly execute and acknowledge another lease in conformity with the terms and stipulations of the one which is the foundation of this cause.

From which decree the defendants appealed to this court.'

The cause was argued before EARLE; MARTIN and ARCHER; J.

*Magruder*, for the Appellants: 1. The chancellor decides, that the court could entertain jurisdiction of the whole case, because it can give a more ample and full relief to the parties. 2. Although no person will be compelled to accept a conveyance and to pay a consideration, when the title is *clearly* not in the party contracting to sell or lease, or when *well founded* doubts are entertained of its validity; yet as *Williams* leased from them with a perfect knowledge of all the circumstances connected with it, equally as well then as at the time he answered the present bill, and as he, and those claiming under him, have remained, and still remain undisturbed and unmolested, the raising of doubts now in regard to the title ought not to prevent the contract from being enforced, and accordingly the chancellor does not perceive the necessity of going into an examination of the title. 3. The chancellor, without regarding the plea of limitations, or the judgment at law against the claim of the complainants, to rent up to the 15th of April 1811, decrees that the defendants pay the rent which has accrued since 15th of April 1803. 4. That the original lessee being dead, a new lease *cannot* be decreed unless his executors claim. All these points, (with the exception of the latter,) the appellants controvert, and contend,

1. That if the chancellor could not decree the specific execution of the contract, he could not enforce the payment of the *rent*, or entertain a suit in which the complainants could only recover what, if they were entitled to at all, could be recovered by them only in an action at law grounded upon the instrument executed, or in an action for use and occupation.

2. That at no period of time could the court of chancery compel the original defendant to take a lease; unless the complainants could prove their title to the property which they undertook to lease, that being expressly put in issue by the parties.

3. That if the complainants were entitled to recover rent for the occupation of the property, and their remedy was not exclusively at law; yet the judgment of the county

court is a conclusive bar to the recovery of the rent claimed in that suit. And further, that the plea of limitations, relied on by the defendant, is a bar to the recovery of a considerable part of the rent decreed by the chancellor; and if the rent could be recovered, no interest can.

4. The chancellor, in relying upon what he supposes to be the circumstances connected with the title, and *Williams's* supposed knowledge of them, as furnishing a reason for sustaining the contract, without examining the title, not only disregards the proof in the cause, but undertakes to decide matters which neither party designed nor attempted to put in issue, and to furnish the complainants with a case which they had not brought into court. It is not alleged, and therefore the chancellor had no right to decide, that the original defendant was bound by his contract to take a lease of the property, the title to which was doubtful, or was precluded by the terms of the contract from insisting that a clear title should be shown to exist in the complainants before the defendant was obliged to pay rent for the property.

The ground of the judgment in the county court in the action there brought, was that the lease had not been recorded in the proper office; this is not true in fact, for the lease was recorded in the office of the general court, within the time prescribed by law. The defendant was not bound to take so doubtful a title as has been proved in this case. *Sugd.* 206, 207, 208, 210. *Roake vs. Kidd,* 5 *Ves.* 647. If the purchaser's defence to a bill for a specific performance rests merely on the want of title in the vendor, he ought to depend on his answer, and not to file a cross bill to have the agreement delivered up; because the vendor can make no use of the contract if he has no title. *Sugd.* 156. *Hilton vs. Barrow,* 1 *Ves. jr.* 284. By the act of June 1777, *ch.* 3, leases by the corporation need not be acknowledged. The chancellor, in his decree, says that the defendant, having entered into the lease, the *onus probandi* lies on him to prove that there was not a good title in the lessors. Where a party contracts to take a doubtful title, then it may be enforced; but it must appear in the contract itself. *Sugd.* 205, 296. Here the title is put in issue; yet there is no proof of title. The complainants by their bill, set out their title, stating that they are seized in fee, &c. they cannot therefore rely on

any other title than that under which they claim: The relief granted must be agreeably to the case made out by the bill; and cannot be different from it. *Cooper's Plead.* 6, 7, 13. At law, it is admitted, the defendant could not controvert the title of the lessors. The complainants had remedy at law for the rent due; and as the contract cannot be enforced against the present defendants, they not being bound to take a new lease, there was no case for the interposition of the court of chancery. There are cases where the party may go into chancery to recover rents due; but this is not one of those cases: Since the death of the original defendant, this suit is nothing more than for use and occupation. The chancellor did not regard the judgment at law, or the plea of limitations. The judgment at law was a bar to all rent claimed to that time; and the plea of limitations was a bar to all rent accruing for three years before the bill was filed. The chancellor not only decreed payment of all rent claimed, but also interest from April 1803 to 1822. If the complainants had a right to come into chancery for the rent, they had no right to interest.

*Brewer,* jun. for the Appellees. To show a title in the appellees to the property in question, he referred to the testimony in the cause, and the acts of assembly 1683, *ch.* 5; 1684, *ch.* 2; 1694 *ch.* 8; 1695, *ch.* 7, *s.* 2, 4; 1718, *ch.* 19; 1719, *ch.* 5; 1723, *ch.* 26; 1753, *ch.* 25; and June 1777, *ch.* 3. Under the act of 1718, *ch.* 19, a new plat of the city was directed to be made, the former plat having been destroyed by fire. The plat thus made has also been lost, or at least no record of it appears; but the complainants exhibited a plat which they contend, and which the proof establishes to be, if not the original, a true copy of that made under the last mentioned act. To show that this plat, being an ancient one, or a copy of the original, which is lost, or cannot be found, is evidence, he referred to *Butler vs Craig,* 2 *Harr. & M‘Hen.* 219. *Smith's Lessee vs Steele,* 1 *Harr. & M‘Hen.* 419. *Scott's Lessee vs Ollabaugh,* 3 *Harr. & M‘Hen.* 511. *Ridgely's Lessee vs Ogle & Leonard,* 4 *Harr. & M‘Hen.* 126, *(note.) Atkins vs Hatlon, Anstr.* 387. *Miller vs Foster, Ibid* 607. *Peake's Evid* 90; and *Bull. N. P.* 248. If the title of the complainants has not been sufficiently established, yet the de-

1825.

Williams
vs
Mayor, &c

fendants' testator made the contract with a full knowledge of the situation of the property, and of the claims set up to it; he is therefore bound by it, and it may be enforced. *Gibbons vs Caunt*, 4 *Ves.* 849. *Stapleton vs Stapleton*, 1 *Atk.* 1. *Cann vs Cann*, 1 *P. Wms.* 725. The judgment in the action at law is conclusive that the complainants could not recover the rents due under the lease. The lease, though recorded in the records of the general court, is not a valid one. By the act of June 1777, ch. 3, it is said, the lease need not be acknowledged; but by the act of 1715, ch. 47, all transfers of real estate, for above seven years, are required to be acknowledged, so as to admit them to record. A corporation may do a number of acts under their common seal; but they must acknowledge deeds, which they can do by letter of attorney.

*Mayer*, on the same side. The testator of the defendants acquired not only the title of *Mackubin*, but also that of the complainants, and having these titles, and the possession of the property, he has attempted to shield himself under some imaginary defects. Standing, as he did, he was bound by his contract, which he entered into with full knowledge of the facts. He has not shown that his title is *superior* to that of the complainants, and it was *at least* incumbent on him to do that. A tenant cannot dispute the title of his landlord. *Co. Litt.* 47. The owner of ground may take a lease from a stranger, and he is bound by such lease. *Ibid.* Where a purchaser takes possession of the estate, it is in most cases a waiver of the title of the vendor. *Sudg.* 9. *Calcraft vs. Roebuck*, 1 *Ves. jr.* 226. *Fludyer vs. Cocker*, 12 *Ves.* 27. *Colton vs. Wilson*, 3 *P. Wms.* 193; and *White vs. Foljambe*, 11 *Ves.* 848. The court will not disturb contracts entered into by the parties with a full knowledge of their respective rights. 2 *Pow. on Contr.* 213. *Pullen vs. Ready*, 2 *Atk.* 592. Here the complainants cannot be restored to the situation they were in before the contract was made. The defendants cannot say that the lease has been regularly recorded, and is valid. Nor can they say the complainants' remedy is at law. They are bound by the admissions of their testator in the suit at law. Where there are difficulties to a recovery at law, the party may be relieved in equity. If the complainants had proceeded *de novo* at law, the defen-

dants' testator, says in his answer, that he would have brought them into chancery. The complainants did right, therefore, to come directly into chancery, since the defendant would himself have eventually brought them there. The lease is not a valid deed, if it did not need acknowledgment, there being no place designated by law where such an instrument should be recorded. It having been recorded where it was, is the same as if it had not been recorded at all. The clerk of the general court had no authority to record a deed which had not been acknowledged. The act of June 1777, *ch.* 3, did not mean to make any alteration as to the manner of acknowledging deeds. It empowers the corporation to transfer their property under their common seal, but does not say the deed need not be acknowledged. Defective deeds may be perfected on application to chancery. *Hunsden vs. Cheney,* 2 *Vern.* 150. *Finch vs. Winchelsea,* 1 *P. Wms.* 279. The complainants having rightfully come into court, the court will go on and give relief for the rent, although it be competent for a court of law to do so. On an application for discovery, the court will proceed with the case and grant relief. *Francis's Maxims,* 42. A court of equity may decree for mesne profits. *Coventry vs. Hall,* 2 *Chan. Ca.* 134. *Dormer vs. Fortescue,* 3 *Atk.* 129, 130. *Campbell vs. French,* 2 *Cox's Rep.* 366. *Pultney vs. Warren,* 6 *Ves.* 89. *Curtis vs. Curtis,* 2 *Bro. Chan. Ca.* 620. *Weymouth vs. Boyer,* 1 *Ves. jr.* 417. *Coventry vs. Thinn,* 2 *Chan. Ca,* 71, 72. *Thorndike vs. Collington,* 1 *Chan. Ca.* 79. *Collett vs. Jacques, Ibid* 120. *Underwood vs. Staney, Ibid* 78. *Ratcliffe vs. Graves,* 1 *Vern.* 196. *Livingston vs. Livingston,* 4 *Johns. Chan. Rep.* 217; and *Langley vs. Brown,* 2 *Atk.* 198. If the complainants might have succeeded in ejectment at law, they could nevertheless apply to equity for a specific performance. An action for use and occupation could not be brought at law, for the contract here was under seal. But if it could, then an action of debt might have been brought; and where debt is brought for use and occupation, the act of limitations will not bar a recovery; at all events, our statute of limitations does not bar an action of covenant for rent, and this proceeding in equity, the court will consider upon the same footing with such an action, in order to preclude the plea of limitations here set up. A

plea of that kind is not favoured either at law or in equity. *Williams vs. Wingate,* 6. *T. R.* 62. This then is similar to such an action. *Collett vs. Jacques,* 1 *Cha. Ca.* 120. As a general principle, interest is not recoverable for rent, but that is where it is owing to the negligence of the landlord. Where the default is on the part of the tenant, interest is recovered. 6 *Binney's Rep.* 159. Interest is always recoverable, unless it is inequitable to ask it. *Clark vs. Barlow,* 4 *Johns. Rep.* 183.

*Jones,* also for the Appellees. Here is a consummate contract—a lease executed with covenants—Possession and holding by the lessee for a number of years—Payment of rents for several years, and refusal to pay further. He thereby compelled a suit to be brought at law, in which he defended himself upon a technical objection, not upon the ground that no rent was due. There was a final judgment on a formal objection against the complainants' recovery, and recourse is had to equity to enforce the contract. The defence, among others, is the want of title to that property, which the lessee had enjoyed without interruption. The bill sets out a lease for 99 years. This is not denied in the answer, nor is its execution denied. The burthen of impeaching the title rests on the defendant. He has not done so. He charges a defect of title, and he must show it, and his answer is not sufficient for that purpose. This is similar to debt on bond, where the defence set up is duress, which throws the burthen of proof on the defendant. The complainants were not bound to show title; but they have deduced their title by proof, which the defendant has not disproved. Now he alleges that the title is at least doubtful. There can be no better title for a corporation in a city than that shown by the evidence before the court. The act of June 1777, *ch.* 3, recognizes this property as being under the control of the corporation, and whether they have a fee simple in it or not, is of no sort of consequence. Upon the ordinary doctrine of presumption, the title will be deemed to be sufficient. Here was a possession in the corporation for more than a century, and the property used for public purposes; the defendant, for 35 years, enjoying undisturbed possession under the corporation. This is *prima facie*, if not conclusive evidence, of title in the corporation. Shall such a right as this be uprooted now, and by him who

1825.

Williams
vs
Mayor, &c

1825.

Williams
vs
Mayor, &c

had no occasion to do so, and from whom no such objection should come? Until this bill was filed, nothing was said about the title; nothing was said at law about the defect of title. To defeat such a title there must be the strongest possible evidence of its defect. Suppose a defect of title is established, and a better paramount title is set up by the defendant, is such a defence allowable in him? Can he take advantage of the defect of title? This is not an ordinary case between vendor and vendee in relation to a defective title. If a vendee makes a contract, with a knowledge of a defect of title, he cannot afterwards dispute the vendor's want of title—He took it for better or for worse; it amounts to a waver, and binds the vendee. *Sugd.* 1, 2. If the vendee could have ascertained the nature of the title, he is bound by the contract. *Ibid* 9. As to the objection between the quality and quantity of the estate sold. *Ibid* 192, 195, 197. 2 *Com. Dig.* tit. *Chancery*, *(2 C 1.)* If a purchaser enters on part of the premises, he is compelled to go on and complete the purchase. In *Liddal vs. Weston*, 2 *Atk.* 19, there was an apparent defect of title, and it was not probable that the superior title would ever be enforced—That is similar to the case before the court, where an outstanding title is set up. In *Kingsley vs. Young*, 17 *Ves.* 469, there was no legal title, but only an authority to sell. It was presumed the purchaser took the estate with full knowledge; this is a strong case in point. In *Thomas vs. Powell*, 2 *Cox*, 394, the purchaser accepted the title. *Fane vs Spencer*, 2 *Madd. Rep*, 438. The mere circumstance of the nonproduction of a good title on the part of the vendor, will not prevent the vendee being bound to go on to show title in another to absolve himself from the contract. The defendant, by his own showing, cannot take advantage of the title if it be a defective one. He admits he took the lease to fortify his title, which was a defective one. It amounts to a compromise; and take it in the strongest terms, he is shut out from ever disputing that title he contracted for. *Cann vs. Cann*, 1 *P. Wms.* 723. *Stapleton vs Stapleton*, 1 *Atk.* 10. 2 *Com. Dig.* tit. *Chancery*, *(2 C 1.)* *Goilmere vs. Batteson*, 1 *Vern.* 48. Here the defendant wishes to keep the rents and profits, and the property too. Shall he be in a better situation than other vendees? *Fludyer vs Cocker*, 12 *Ves.* 27. If possession is taken and the contract remains executory, the vendee

1825.

Williams
vs
Mayor, &c

may be relieved, if the title is defective, but he must give up the property. *Gibson vs Clarke*, 1 *Ves. & Beames*, 500. An objection has been taken to the jurisdiction of the court of chancery, on the ground that remedy may be had at law. The act of June 1777, *ch.* 3, did not point out where the deed should be recorded. But admit the deed to be properly recorded; yet in the suit at law the defendant said the deed was not recorded any where, except in the mayor's court; and on that admission the court at law decided. That decision was either right or wrong. But the chancellor could not look into the decision to see whether it be right or wrong; it was a decision conclusive that relief could not be had at law, so as to let in the jurisdiction of chancery. A new fact has been since disclosed, to show the decision should not have been what it was. Who was in possession of this new fact? The defendant; and he now wishes to take advantage of the false statement submitted to the court at law to defeat the claim in equity. Having defeated the complainants at law, by a falsehood, the defendant now sets up the truth by disclosing the fact, so as to turn the complainants out of a court of equity. If it shall appear that the complainants have remedy at law, shall they be sent back to that tribunal, and by doing so be defeated of all the rent, but for three years preceding the suit. This will be such glaring injustice as this court will not sanction. It has been said that the complainants might have sued for use and occupation. If they had sued for use and occupation, then the defendant would set up the lease. If he had not, no more than three years rent could be recovered, besides being subject to a plea of *nil habuit in tenementis;* and although the complainants may, in part, recover at law, they are not bound to go there, when full and complete remedy may be had in equity. The act of limitations is pleaded. To what is it pleaded? It cannot be pleaded in this suit for enforcing a contract, and claiming rents as a consequence thereof; the complainants by fraud, were defeated at law; will limitations bar in such a case? But it is said the bill sets out a good title, when it was a defective one. There is no authority to defeat the bill, and to show that it does not set out all that is material, and for which they can claim full and complete remedy. Admit the complainants cannot claim relief different from that they ask for by their bill; yet if the particu-

lar relief asked for is not inconsistent with the general re-- lief prayed, it may granted.

*Taney*, in reply. The complainants cannot allege fraud, unless it is charged in the bill. The defendant is charged with having concealed a record. How could he conceal a record? The records of the general court were open to the inspection of all persons. The defendant was not bound to let the complainants know that the deed was recorded. He was not bound to aid them with information of their title. A case stated, like a bill of exceptions, is nothing more than what is alleged as proved by both par- ties. Neither party is bound to point out any defect in the title or statement of the other. The deed was not a pri- vate paper in the possession of the defendant only. The agreement to the case, stated by the defendant, did not es- top him from denying any fact alleged in the case stated. The lease was decided to be defective. To estop the de- fendant, it must be a complete instrument. An agreement never operates by way of estoppel. It is a contradiction to say, a paper which is void operates as an estoppel. The chancellor decreed that the executors may claim a lease, but he would not compel them to take one. But the com- plainants allege that this is erroneous, and that this court may correct that error. They have not appealed, and can- not claim a reversal on that ground. By not appealing, they have acquiesced in the decree. One question is, whether a complainant is bound to prove a title in order to entitle him to enforce a contract where the issue before the court was whether he had a title or not? Here the com- plainants aver a seisin in the property; this is denied, and it must be proved. Upon this rests the whole equity of the case. Will this court enforce a contract unless a title in the party is made appear? A lease is a permission to the ten- ant to enjoy the property, and is an equivalent for the rent. Suppose they had not alleged a seisin, the consideration would have been out of the bill, and there could be no pre- tence for relief. They allege a seisin, and attempt to prove a compromise—not the consideration alleged in the bill. This might be a good consideration, but it must be alleged and proved. But you cannot prove a fact not put in issue. The *allegata* and *probata* must agree. In *Coop- er's Plead.* 6, 7, it is said, the party must put in issue in the

bill what is intended to be proved; and *Clarke vs. Turton*, 11 *Ves.* 240, is cited, where, as the fact was not in issue, the deposition was not permitted to be read. Suppose the compromise had been proved, what is the ground of equity claimed? Not on the ground of title. The corporation were bound to prove a title; it is the only equity in the bill, upon the basis of which they can recover—It is on their part to prove their title; they are bound to prove their case. The defendant was not bound to prove any title, until the complainants had proved their title. He denied the title of the complainants, and alleged a different one. He need not prove a title in any one, where the complainants show none. The answer of the defendant is proof in the cause that the complainants had no title, it being responsive to the bill. What is the title of the corporation? They show none from the grantee to them; but they claim under certain acts of assembly. Instead of proving a title in themselves, they have showed one out of themselves. The whole property in controversy is covered by the act of assembly, which reserved it for public purposes, (not for the benefit of the corporation.) The first act, 1719. *ch.* 5, vested the property in *Robert Johnson*, with a *proviso*. The grant emanates from the province; and the corporation were vested with power to re-enter, if the ground rent of 5*s.* was not paid. There is no power given to the corporation to rent, lease, &c. The government had appropriated the ground to public purposes, and they vested it in *Johnson*. If it had been in the corporation, they could have leased or sold to *Johnson;* but they were constituted the agents of the public, to see that *Johnson* complied. By the act of 1723, *ch.* 26, the same title is vested in *Gordon*, in the same manner and upon the same conditions, *Johnson* not having complied, &c. By the act of 1733, the same property is vested in *Middleton* on the same conditions, &c. These acts all assert the property to be in the province. The corporation, by accepting the ground rent of 5*s.* acknowledge the right of the public. The act of June 1777, *ch.* 3, gives power to the corporation to sell or lease the property, under their common seal; so much of the money and rent reserved, to be applied to the purchase of one or more places for building ships, and the overplus to be applied to the benefit of the city. Does the act vest a fee in the corporation? They are the con-

stituted agents of the public. What was given to the cor-
poration was the overplus of the money. It is not shown
that any place or places were purchased for ship-building.
It appears that the corporation have received a large sum
of money, and appropriated it to their own use. How can
they claim of the defendant for violating his contract,
when they have violated the sacred trust reposed in them
by the public? Under the authority of the act of 1777,
they make the lease; and so far from recovering from the
defendant, they owe a large sum of money to the state.
By the *third section* of the act of 1777, it may seem that
the property to be purchased was to belong to the city.
Admit this, they did not purchase, but if they had, it re-
lated only to the property to be purchased; and they would
only hold for the benefit of the public. But no sort of title
was vested in them to be sold or leased by them. They
were solely trustees of the state. This being for the be-
nefit of the state, the state should be a party in this cause.
But putting aside the want of parties. Has any title been
proved in the corporation? Their long possession, or the
possession of any under them, cannot bar the right of the
state. This is assuming that they leased as owners; but
that was not the fact, they leased as agents, and the de-
fendant held under the state, and under the state's title.
He held under the lease of the corporation, but under the
title of the state. The corporation do not profess to lease
under their own title, but only to act as the representatives
of the state. The possession of the defendant, if under
the lease, was a possession under the title of the state; and
is evidence of title out of the corporation. What would
be the effect if the state was a party, is a different ques-
tion. But what is the proof of the possession, as against the
state? The answer of the defendant is responsive to the
bill, and it says he agreed to purchase to avoid dispute,
but he was then in possession, and though it is admitted
in the case stated, that he did enter under the lease, yet a
case stated is no evidence against either party. A bill or
answer in chancery is no evidence, unless sworn to. A
case stated is merely to bring a question of law before
the court. It is similar to a demurrer; and it has never
been supposed that a demurrer, which admits all the facts,
would be evidence against the party demurring. It can-
not be distinguished from a bill in chancery, which is con-

sidered a mere statement of counsel. To show that the ship carpenters lot includes the whole of the ground in controversy, the plat is referred to; and it is admitted that ancient surveys are evidence. The plat offered by the defendant is *the original plat* made out by *Stoddert*, the surveyor appointed under the act 1718, *ch*. 19. The plat offered by the complainants is stated to be *a copy*. Upon the doctrine of title, how far a vendor is bound to accept it, and how far a disputed title may be enforced in a court of equity, it may be said that when a vendee, after having been in possession, comes into a court of equity to be relieved against the contract, his situation is very different from that of a vendor, who comes in to enforce it. Here the vendors come in, and claim the aid of the court, to enforce a contract against the vendee. Whose fault is it? Was it not the duty of the vendor to see that his deed was a good one. From 1801 to 1812, there has been an acquiescence by the corporation in the defendant's refusal to pay rent. Then they went into a court of law; and claiming under a defective lease, because they would not resort to the record for proof, a judgment at law was had against them. The rule between vendor and vendee is laid down in *Sugden* 210, and it is, that a vendee is not compelled to accept a defective title. There is no evidence that the defendant took possession under the lease from the corporation. In most of the cases cited, the vendees had taken possession under their purchases, and then went into equity to be released from their contracts. In *Kingsley vs Young,* 17 *Ves.* 468, the principle is not at war with that laid down in *Sugden,* 210. It does not stand upon the ground of a disputed title. In the purchase of a disputed title, the party sells the right he has. But between lessor and lessee, it is for permission of the lessee to enjoy, and is the consideration by which he is to enjoy. This is different from the case of the vendor and vendee. A vendee gets the right, but not permission to enjoy. In *White vs Foljambe,* 11 *Ves.* 343, 344, the lessee was not bound to take a lease of a doubtful title. There is a wide difference between forcing the lessee to take a lease, and relieving a lessor, who took possession. Here the lessors come to enforce a contract to take a lease of a doubtful title. But even were there no difference, yet here the lessee was not in possession under the lease, or the contract for the

1823.

Whittington
vs
Farmers Bank &c

lease. The defendant has not denied that the lease was not recorded, it is therefore not in issue whether it was recorded or not. But it must be taken as not recorded. The complainants had remedy at law. They might have brought their action for use and occupation. But it has been said, that in such an action the defendant might plead *nil habuit in tenementis.* This is not so. A tenant cannot contest the plaintiff's title. 6 *Bac. Ab.* 44. Here the complainants were guilty of laches before they brought their suit at law, and before they came into equity. The loss is by their own negligence. The accumulation of rent is by their fault. That which would bar at law, will bar in equity. The act of limitations is a complete bar.

DECREE AFFIRMED.

June (E. S.)          Whittington *vs.* The Farmers Bank of, &c.

It is no objection to a protest of a promissory note, that it is stated to have been made at the request of *The Farmers Bank of,* &c. instead of *The President,* &c. the corporate name The protest of a promissory note is not evidence of itself in chief of the fact of a demand on the drawer. If the notary public was dead, the case would be governed by different considerations.

Appeal from *Worcester* county court. In the report of this case in 5 *Harr. & Johns.* 499, a mistake has occurred in a part of the court's opinion delivered on the *third* bill of exceptions, which it is deemed proper to correct. In that bill of exceptions it is stated, that the plaintiffs below, (the appellees,) having read in evidence the promissory note, on which the action was instituted, offered in evidence a protest of the note, made by a notary public. To which the defendant objected, on the ground that the protest appeared to have been made at the request of *The Farmers Bank of Somerset and Worcester,* instead of *The President and Directors of the Farmers Bank of Somerset and Worcester,* (the corporate name of the plaintiffs, and by which name they brought their action.) This objection the court below overruled, and the defendant excepted, &c. The following is the corrected opinion of this court as delivered by

Dorsey, J. This court concur with the court below in the opinions expressed by them in the 1st, 2d, 4th, &c. bills of exceptions; but they *think, that though the court did right in not sustaining the objection made by the appellant to the form of the protest, set out in the third bill of exceptions, there was error in permitting it* to go to the jury. We hold it to be clear, that the protest of a promissory note is