## ELLIOTT, ET AL. V. BOAZ, ET AL.

1. The vendor of a forty acre tract of land, well knowing the location of the corners and lines, represented one of the lines so to run as to embrace nine or ten acres of cleared land, when in truth it contained much less—the difference of value between the land pointed out and that conveyed amounted to almost one third the purchase money; upon discovering the mistake, the vendee proposed to the vendor to rescind the contract, or to be allowed to retain the land, and be allowed a deduction for the purchase money, or leave the matter to arbitration—which several propositions were rejected: Held, that these facts show a fraudulent misrepresentation, and entitle the vendee to a rescission of the contract.

2. Where E sells land of which he is the proprietor to B, and the legal title being in H, he makes a conveyance according to the vendee's directions, an offer by the vendee to rescind, should be made to E instead of H.

3. *Quere?* Is a vendee of land who proposes to rescind the contract, bound to abandon the posssession before he can file a bill to enforce a rescission, where his proposition is rejected by the vendor. However this may be, as a general rule, no such obligation rests upon the vendee, if the vendor is insolvent.

4. Where the vendor of lands, in answer to a bill by the vendee for a rescission, insists that the sale was fair and *bona fide*, and an offer made to him to rescind would have been unavailing, the bill should not be dismissed because it is not proved that an offer was in fact made before it was filed.

5. One who unites with the vendee in notes made for the purchase money, and who is sued with him thereon, may join with him in a bill to enjoin proceedings in the action, and to rescind the contract.

Writ of Error to the Court of Chancery sitting in Talladega.

THE defendants in error filed their bill, setting forth that they executed their two promissory notes for the sum of $175 each, payable to the plaintiff, Huey, in consideration of forty acres of land, which Elliott had bargained and sold to Boaz, but which were conveyed to the complainant, Davis, in virtue of such sale, by Huey, in whom the legal title was vested. It is alledged that Elliott, well knowing the boundaries

of the land, represented them falsely to the purchaser, by affirming that ten or eleven acres of a field were embraced by the northern and eastern lines, when in truth only two or three acres were within the same; and also, that several acres of woodland, of a better quality than it really contained made part of the tract. In consequence of such false and fraudulent representation, it is averred that Boaz has sustained damages, not only by not obtaining a title for the land which he supposed he purchased, but for an expenditure in making improvements, of work, labor, &c.; and that his inducement to purchase, to a great extent has failed. It is further stated, that the vendee, upon discovering that he had been deceived by the false representations of Elliott, offered to deliver up to him the possession of the land, and cancel the contract of sale; but to this proposition the latter refused to accede.

The complainants then alledge, that defendant, Huey, has sued on the note first due, in the county court of Talladega, and is about recovering a judgment thereupon; and that defendant, Mordecai Chandler, has instituted a suit on the other note, which was pending when the bill was filed. The prayer of the bill is, that the contract be cancelled, the notes and deed be delivered up, the suits that are pending perpetually enjoined, and the title to the land revested in Huey; that *subpœnas* issue to the several defendants, and that such further relief be granted as the nature of the case may require. An injunction was awarded, and *subpœnas*, served upon the defendants. Elliott answered, admitting the sale, but insisted that he acted as the agent of Huey, who was the proprietor of the land, that the fact of his agency was known to Boaz, and denied that he made to him any misrepresentation, either intentionally or otherwise.

Huey, in his answer, affirms that he was the *bona fide* proprietor of the land; that Elliott, in contracting for its sale, acted as his agent; that he believes, from information, that he made a fair and correct representation of the boundaries, and that he believes the fact of Elliott's agency was known to Boaz, at the time of his purchase. The answers of both of these defendants embrace a demurrer to the bill.

The bill was taken as confessed as to Chandler, and testi-

mony taken preparatory to the hearing of the cause. Afterwards, Chandler was permitted to file his answer, and the decree *pro confesso* set aside.

The cause coming on to be heard, upon the bill, answers, and proofs, the defendants objected to the reading of two of the depositions, on the ground that no notice of the filing of the interrogatories was given to Chandler; but the objection was overruled, because that defendant was in default, and a decree *pro confesso* was in force against him, even after the day when the witnesses were examined. Touching the merits of the cause, the Chancellor was of opinion, that the allegation of a fraudulent representation by Elliot, as to the boundaries of the land, was established by the evidence, and did very materially affect the object of the complainant's purchase; the value of the land actually conveyed being near one third less than that Elliott represented he was selling. That as Elliott was the agent of Huey, to whom *mala fides* is not attributed, notice to Elliott that his fraudulent representation was detected, and an offer to rescind the sale was sufficient to authorize a rescission, although no such proposition was communicated to his principal. *Further*, he supposed the bill itself was an offer to rescind, which Huey, by his answer, refused to do, and this he considered was all that should be required. Thereupon he adjudged that the contract disclosed by the bill be rescinded, and that the conveyance from Huey to the complainant be cancelled; that the notes given for the payment of the purchase money be void, and the title to the land revest in the defendant, Huey. *Further*, that it be referred to the Register to inquire and report what has been the value of the occupancy of the land by Boaz, and of any permanent improvements he has made or erected; that the one be set off against the other, the balance reported, and to whom due. *Lastly*, that all costs be paid by the defendant, Elliott.

S. F. RICE, for the plaintiff in error, made the following points:

1. The bill shows that the "bearing trees on which the lines were marked," were on the land when Boaz purchased, and no effort was made to conceal them from him; this be-

ing the case the purchaser could not have observed ordinary diligence, and cannot now be allowed to rescind the contract. [Camp v. Camp, 2 Ala. Rep. 632; Steele v. Kinkle & Lehr, 3 Ala. Rep. 352.] A deed was made and accepted, and the doctrine of *caveat emptor* applies. [Br. B. at Mobile vs. Cullum, 4 Ala. Rep. 21.]

2. The vendee can't rescind without abandoning the possession, unless the vendor is insolvent, or unable or unwilling to make a title, then the vendee may retain it as the means of reimbursing the purchase money advanced by him. [Duncan v. Jeter, 5 Ala. Rep. 604.] Here, it is not pretended that Elliott and Huey are insolvent, nor has the possession been abandoned, but nothing more than a mere offer to abandon by the bill.

3. The offer made to Elliott to rescind the contract was unavailing, for any purpose; his agency, for any thing appearing to the contrary, ceased with the sale, and he had no right to receive the deed or deliver up the notes. [Clements v. Loggins, 2 Ala. Rep. 514.] Davis, the surety of Boaz, held the deed, and Huey was the payee of the notes, so that Elliott and the vendee could not (even if both of them had been so inclined,) have rescinded the contract. [Bates vs. Terrell, 7 Ala. Rep. 129.]

4. The bill is bad, and should have been so held on demurrer; for the remedy of Boaz, by an action on the case, for a deceit, is undoubted. Besides, Davis is improperly joined as a complainant : it is not alledged that he has paid the debt for his principal, or if he were to do so, that his principal was unable to reimburse him. [Whitaker, et al. v. Degraffenreid, 6 Ala. Rep. 303.]

5. If Davis had an interest in the land he should have tendered the deed and demanded the notes; and the bill is defective for not showing that this was done.

F. W. Bowdon, for the defendants. So far as the law of the case is concerned, the decree is well supported by Calloway v. McElroy & Flanigan, 3 Ala. Rep. 406; Younge v. Harris, et al., 2 Ala. Rep. 108; Camp v. Camp, Id. 632. Davis is certainly a proper party to the bill; he joined in making the notes, and is the grantee in the deed. [Story's

Eq. Plead. 233-4, §§ 284-5-6 ; 5 Ala. Rep. 397.] Chandler having made default, and a decree *pro confesso* being rendered against him, he was not entitled to notice of the time and place of taking the depositions. [8 Porter's Rep. 277.]

COLLIER, C. J.—In Younge v. Harris's adm'r, et al., 2 Ala. Rep. 108, it was held, that, where one is induced to purchase land in consequence of the fraudulent representation of the vendor in respect to the title, the falsity of which he had no means of ascertaining by the exercise of ordinary diligence, he may have relief in chancery, although he still retains the possession—it being shown that the vendee had died, leaving his estate insolvent, and that the vendor has paid part of the purchase money. So where the vendor of land represented to a person who afterwards became the purchaser, that an open unmarked line would so run as to include a field of forty acres of rich bottom land on an adjoining tract, worth more than the residue of the land proposed to be sold; this representation of the vendor, which was an inducement to the purchase, was false, and he was so informed before he made it: *Held*, that this was such a misrepresentation of a material fact, as would authorize a court of chancery to rescind the contract. (Camp v. Camp, 2 Ala. Rep. 632.]

Where the vendor of land fraudulently induces the vendee to purchase, by showing him lands of a superior quality, and after the contract conveys lands less valuable, the vendee can not set up these facts in his defence, when sued at law, for the purchase money. In such case relief must be sought in equity, where complete justice can be done to both parties, either by rescinding the contract, or allowing compensation, as may seem most proper under the circumstances. [Calloway v. McElroy & Flannagin, 3 Ala. Rep. 406.] The allegations in the present case, touching the representations by Elliott at the time he shewed the land to the defendant Boaz, make case strikingly analogous in principle to those cited, and not only in principle, but in its facts, to Camp v. Camp. Conceding that the true lines of the forty acres conveyed, might with proper diligence have been discovered, and yet we cannot think that such negligence is attributable to the

vendee, as should prevent him from setting up the fraudulent misrepresentation of the vendor, as a ground for the rescission of the purchase. It perhaps requires some observation and experience to be able to distinguish the marks of a *surveyor*, made elsewhere than at the corners. *Besides*, it is, in general, permissible, to rely on the positive asseverations of the vendor, and visit him with the consequences of their falsity, if made *mala fide.*

Let us inquire whether the testimony taken in the cause sustains the charge of misrepresentation. It does not appear from the proof that Elliott informed Boaz that he was selling the land as the agent of Huey, or that the vendee understood such to be the fact.

There is no material conflict in the testimony of the seven or eight witnesses whose depositions were taken. These facts may be considered as satisfactorily proved, viz : when Elliott and Boaz were on the treaty for a sale of the lands in question, the former designated a tree as the corner, and pointed out to the latter the direction that the lines would diverge therefrom ; he also said that a field containing twelve or fourteen acres, was, with the exception of about three acres, embraced by the forty acres agreed to be sold, when in fact the true line was full sixty yards from that designated, and but a small portion of the field was embraced within them. The difference between the value of the land as represented by Elliott, and that conveyed by Huey, was one hundred dollars. Elliott knew where the corner and lines, which he had professed to point out, were located. *Further*, Boaz, upon discovering the misrepresentation, proposed to Elliott to rescind the contract—to give up the land, or retain it and have a deduction made from the purchase money, or leave the matter to arbitration ; but each of the propositions were rejected. The value of the improvements made upon the land by Boaz, was about thirty-four dollars.

The proof is so direct and pointed, that its mere statement is quite sufficient to show that the inference of a fraudulent misrepresentation is entirely legitimate, and the allegation of the bill in this respect is well sustained.

It is insisted for the plaintiffs in error, that the bill is defective in not stating that the offer to rescind was made to

98

Huey instead of Elliott, and that such an offer would be un-availing, even if made to the former, unless it was followed by an actual abandonment of the possession. We cannot think that the frame of the bill is objectionable in this parti-cular. It affirms in effect, that although the conveyance was made by Huey, and the notes for the purchase money paya-ble to him, yet the land was the property of Elliott, and sold by him for his own benefit. In this aspect of the case, it would seem quite sufficient that the offer of a rescission of the contract should have been made to Elliott. But if the bill had proceeded upon the hypothesis that Elliott was a mere agent of Huey, for the purpose of selling the land, we should be inclined to think that his authority ceased with the sale, and in that event the offer should have been made to Huey.

In respect to the necessity of abandoning the possession of land where an offer is made to rescind the purchase, it may be asked if this is necessary for any other purpose than to put the vendor in *statu quo* ? Is there any rule of law which makes it more imperative upon the vendee of land to aban-don the possession where the vendor refuses to accept it, than it is upon the vendee of personal property, who for some defect in the title, or thing itself, proposes a rescission of his purchase? If the vendor, after having refused to rescind, should take advantage of the *locus penitentiæ*, and so inform the vendee, the failure of the latter then to yield to him the possession would perhaps destroy the effect of the offer and refusal. But these are questions which it is not necessary now to consider. The general terms in which the court speaks upon this point, in Duncan v. Jeter, 5 Ala. Rep. 604, are to be taken in reference to the case before the court, and beyond that, if in conflict with the law, would not be regard-ed as authoritative. But taking the language employed in that case in its broadest sense, and we still incline to the o-pinion that the failure to abandon the possession in the pre-sent case cannot affect complainant's right to relief. Although it is not alledged *in totidem verbis*, that Elliott is insolvent, yet perhaps there are equivalent allegations, viz : that he con-veyed the land to a third person to prevent it from being sold to pay a debt for which he was liable as a surety. The land

was chargeable to Boaz for the value of improvements which he made on it, at least up to the time that he discovered the fraud, and if Elliott was really his vendor, and insolvent, according to the case last cited, he was authorized to retain the possession for the purpose of reimbursing himself.

This view will show that the bill is not obnoxious to the objection of a want of equity, and its essential allegations are supported by the proof. It is however insisted, that as Huey was the proprietor of the land, and the sale was made by Elliott as his agent, that the contract cannot be rescinded, because an offer to rescind was not made to him. Under the circumstances of the case, this agreement, we think, cannot be supported. Huey, in his answer, denies upon information and belief, that Elliott made any fraudulent misrepresentation, insists upon the liability of the complainants to pay their notes, and shows that an offer to rescind would not have been acceded to by him. A court of equity cannot, consistently with its liberal and enlarged views of justice, dismiss the bill for the supposed defect of proof, when it is palpable that a proposition to rescind would be met by a direct refusal, and a resort to another suit similar to the present, would be necessary to give to the complainants what it now appears they are entitled to.

What has been said, will serve as an answer to the argument that the deed should have been tendered to Huey by Davis, and his notes demanded. Davis is the grantee in the deed, and one of the makers of the notes—perhaps as a surety ; but however this may be, he is clearly a proper party. [Chapman v. Chunn, et al., 5 Ala. Rep. 397.]

We have only to add, that the decree of the court of chancery is affirmed.