# Jenkins *v.* Harrison.

*Bill in Equity for Specific Performance of Contract.*

1. *Conclusiveness of judgment at law, as against equitable relief between parties.*—A judgment in an action at law, against the validity of an instrument as a deed for want of delivery, does not preclude a resort to equity to enforce it as a contract to convey.

| | |
|---|---|
| 66 | 345 |
| 94 | 165 |
| 94 | 631 |
| 66 | 345 |
| 96 | 291 |
| 96 | 528 |
| 96 | 621 |
| 97 | 532 |
| 66 | 345 |
| 103 | 050 |
| 66 | 345 |
| 106 | 167 |
| 108 | 379 |
| 110 | 140 |
| 66 | 345 |
| 111 | 619 |
| 112 | 304 |
| 66 | 345 |
| f127 | 187 |
| 66 | 345 |
| 129 | 646 |
| 66 | 345 |
| 133 | 301 |

[Jenkins v. Harrison.]

2. *Offer to do equity.*—A party who asks the specific performance of a contract, as a general rule, must show performance on his part, or offer to perform, thereby enabling the court to render a decree for the defendant, if necessary; but the allegation is formal, and it is sufficient to show ability and willingness to perform; and "it may well be doubted whether it is material," where the bill shows that the complainant has partly performed, and has been prevented from making full performance by the act of his adversary, and that further performance would not be accepted if tendered.

3. *Statute of frauds, as to contract for sale of lands; instrument defective as deed, for want of delivery, held sufficient memorandum.*—When a memorandum in writing, purporting to contain the terms of a contract for the sale of lands, and signed by both of the parties, is wanting in the certainty and definiteness requisite to a specific performance of the contract, its defects may be supplied by instruments reciprocally executed by the parties a few days afterwards, duly signed, sealed and acknowledged as deeds, but inoperative for want of delivery: such undelivered deeds, and the memorandum signed by the parties, together may satisfy the requisitions of the statute of frauds (Code, § 2121); and if they do not expressly refer to each other, their connection may be shown by parol proof of the attendant circumstances.

4. *Specific performance of contract for sale of lands; when decreed against vendor.*—A purchaser of lands is entitled to specific performance of the contract in equity, against the heirs of the deceased vendor, when he shows that there was a substantial compliance with the requisitions of the statute of frauds; that the contract, though evidenced by several writings, was certain and definite in all its parts, and founded on an adequate consideration; that there was no unfairness in the transaction, and nothing casting suspicion on the capacity of the vendor to enter into contracts ; that the contract is capable of specific performance, and has been partially performed by him to such an extent that serious, if not irreparable injury, must result unless it is enforced.

5. *Alienation of homestead.*—The constitutional provision which declares that a "mortgage, or other alienation of the homestead," by a married man, "shall not be valid, without the voluntary signature and assent of the wife" (Art. X. § 2), applies only to instruments which are perfected by delivery, and operative as conveyances ; and though an instrument which is duly signed, sealed and acknowledged as a deed, but defective and inoperative as a deed for want of delivery, may be enforced in equity, as against the husband or his heirs, as a contract to convey, it can not be so enforced as to the homestead.

APPEAL from the Chancery Court of Colbert.

Heard before the Hon. H. C. SPEAKE.

The bill in this case was filed on the 29th March, 1876, by John B. Harrison, against John S. Jenkins and others, children and heirs at law of Thomas B. Jenkins, deceased ; and sought the specific performance of a contract entered into by and between complainant and said decedent, or other relief appropriate to the facts stated, as hereinafter more particularly shown. The original contract between the parties, as reduced to writing and signed by both of them, was set out in the bill, as follows : "We, Thomas B. Jenkins and John B. Harrison, have agreed, and do agree, that said T. B. Jenkins does take all the stock of goods and chattels that belong to the store, that has been bought for the use of the house, either for sale or use in the store, at first cost ; and said T. B. Jenkins agrees to sell his homestead, where he now resides, to said Harrison, in lieu therefor, at five thousand five hundred dollars ; and said Harrison is to pay said Jenkins four

hundred dollars cash in said trade, and the balance, whatever it may be, to make out the amount, after deducting the amount *what* said Jenkins is indebted to said Harrison, on the first day of November, 1871 ; taking the Franklin stove at cost, and the stove in the counting-room and the cook stove at valuation. Both agree to make a warrantee title to *said lands and lots, acres more or less.* Said Harrison gives up all right to garden, and said Harrison has paid ten dollars of the purchase money. Signed and agreed to, on this, the 3d day of April, 1871." A copy of this contract, as set out a second time in the transcript, instead of the italicized words, " *said lands and lots, acres more or less,*" uses the words " *said land and lot acres more or less.*"

The homestead of said Jenkins, referred to in this contract, was a tract of land containing 240 acres, particularly described in the first paragraph of the bill. " By said agreement so made in writing," the bill alleged, " said Jenkins was to sell and convey in fee-simple title, by proper deed, the homestead of said Jenkins mentioned in the first paragraph of this bill, and was to make full title to the same, at and for $5,500, to be paid as above stated ; and complainant, on his part, was to let said Jenkins have his stock of goods, stated in said agreement, at first cost, and was to pay said Jenkins $400 in cash, and balance to make the amount of $5,500, after first deducting what said Jenkins should be indebted to said Harrison, on the 1st day of November, 1871 ; and said Jenkins was also to take, and complainant was to let him have, a certain Franklin stove at cost, and Jenkins was to have the stove in the counting-room and the cook stove at valuation. These were stoves held by complainant in South Florence. Orator charges, that the lot of land he was to let said Jenkins have, and which he was to convey to said Jenkins by appropriate deed, was lot number 39 as laid down in the map of the town of South Florence ; and said lot then had on it the store-house and warehouse of complainant, and in the store-house were the goods which complainant was to let said Jenkins have in part pay for said homestead. As evidence thereof, orator here now avers that, on the 13th April, 1871, the said Jenkins and orator went into the further execution of said contract, and orator made his deed to said Jenkins, and intended thereby to convey to said Jenkins said lot number 39, at and for the price of $1,000 ; a copy of which is referred to, and the original also, if to be used and had, as evidence of this allegation. The copy is made with copy of acknowledgment of the signing &c. of same by your orator, before H. T. Norman, a justice of the peace in and for said county at that day, and also of the stamping of the same ; all of which is

referred to by copy, as 'Exhibit B,' and the original will be relied on as evidence on the trial. In further execution of said contract, orator and said Jenkins went into said store-house, and took an inventory of the goods, and which goods were delivered to said Jenkins, and amounted to between $3,200 and $3,500, at prices stipulated. This took place on the 13th day of April, 1871. And in further execution of said contract, and to carry out the same, said Jenkins and his wife, Amanda B. Jenkins, then and there made a deed in writing, signed, sealed, and acknowledged by him and his said wife, to orator, for said homestead land in said county, and signed the same on the 13th day of April, 1871; when and where also he and his said wife acknowledged the due execution of said deed, before H. T. Norman, a justice of the peace in and for the said county, and which is certified to by said Norman; all of which is shown by a copy," made an exhibit to the bill.

These were the allegations of the bill, as to the terms and stipulations of the contract sought to be enforced. The deed of complainant and his wife to said Jenkins, as shown by the exhibit, recites the present payment of $1,000 as its consideration, uses the ordinary words of a deed of bargain and sale, and purports to convey "a certain lot, or piece of land, with store-house and warehouse thereon; said lot being known as lot number 39 as laid down in the plan of the town of South Florence, in said county of Colbert, and the store-house and warehouse thereon used and occupied by John Harrison as a merchant; said lot containing one acre, more or less." The deed of said Jenkins and wife, as shown by the exhibit, recites the present payment of $5,500 as its consideration, uses the words "grant, bargain and sell," and conveys the tract of land described in the bill; and it recites that Mrs. Jenkins joins in its execution for the purpose of conveying her right of dower and homestead. Neither of said deeds refers to the other, and neither was delivered at the time of its execution; both being left with said H. T. Norman, whose deposition was taken in the cause, and who thus testified as to the facts attending their execution: "I wrote both deeds. After Mrs. Jenkins had signed her name, I went to the store, and Thomas B. Jenkins signed, I standing by his side; and I kept this deed, to sign and date my certificate as justice of the peace. John Harrison immediately signed his deed, and I took it to Mrs. Harrison's room for her signature. I came back to the counting-room, and at once signed my name to both certificates as justice of the peace, and dated them. I then and there offered the deeds to the parties, and they both said, *Keep them till to-morrow, we have not got the inventory complete.* This was all the delivery that was ever made to me.

I kept the deeds, after all the parties had signed, for the sole purpose of dating and signing the certificates as justice of the peace. I then offered the deeds to the parties, and they declined to take them. I never understood from the parties that they intended this to operate as a delivery of the deeds."

On the evening of the same day, while returning to his home, said Jenkins was thrown from his horse, and died a few days afterwards from the injuries received. Said Norman, in whose possession the deeds had been left, after stating that he went to see Jenkins on the morning of the 14th April, and found him speechless, testified as to the subsequent stamping and delivery of the deeds, as follows: "After a consultation among the members of Mrs. Jenkins' family, John Harrison also being present, it was agreed by all the parties concerned, that the trade should be carried out just as Mr. Jenkins had commenced it. I was requested to meet John Harrison and John S. Jenkins, at the Harrison storehouse, in South Florence, the Wednesday following; and Mrs. Jenkins instructed me to stamp the deed executed by her and her said husband to John Harrison, and deliver it to Harrison; and Mr. Harrison instructed me to do the same with reference to the deed executed by him and his wife to Thomas B. Jenkins—to stamp it, and deliver it to John S. Jenkins, as agent for Mrs. A. B. Jenkins. In accordance with this request, I met said John Harrison and John S. Jenkins at the time and place appointed, stamped the deeds, and delivered them according to their instructions."

Letters of administration on the estate of said Jenkins were granted, a short time after his death, to Mrs. Amanda B. Jenkins, his widow, and John S. Jenkins, one of his sons; and they took possession of the store-house, or continued in possession of it, and sold out the stock of goods. On the 12th August, 1871, Harrison executed to said administrators his promissory note for $238.22, the estimated balance of the purchase-money, payable on the 1st November, 1871; and on the 3d December, 1871, he paid them $400, as the cash payment mentioned in the original contract. They delivered to him the possession of the homestead tract of land, and he was in possession on the 5th August, 1872, when the children of said Jenkins, as his heirs at law, instituted an action at law against him to recover said land, with damages for its detention; and in March, 1876, they recovered a judgment for the land, with $1,500 damages. On the note for $236.22, a credit of $112 was entered as of August 11th, 1871; and the balance being unpaid, the administrators commenced an action on the note on the 10th February, 1872, which action was pending when the bill in this case was filed. Mrs.

Amanda B. Jenkins died before the bill was filed, leaving no property; and the bill alleged that John S. Jenkins was insolvent, and also the estate of said Thomas B. Jenkins.

The prayer of the bill, which was drawn with great fullness and particularity, covering four pages of the transcript, was for a specific performance of the contract, an injunction of the judgment and action at law, and an account; and in this connection the bill contained the following allegation, or offer to do equity: "Orator prays that an account be ordered by the court, and that the register be ordered to state an account in the matters herein charged and complained of; and if, by possibility, or mistake, or otherwise, it should turn out that orator is in arrears as to payment of said $5,500 purchase-money, other than the balance of $126.22 due on said note, he here now offers to pay whatever balance may be found against him, including balance on said note, and the amount thereof, with interest, and all and every other sum or sums of money your honor may require him to pay; and he is ready to do and perform in the premises whatever this court shall adjudge and decree against him, and here now so offers to conform." The bill prayed, also, in the alternative, that, if the complainant should be held not entitled to a decree for a specific performance of the contract, his deed might be declared null and void; that an equitable lien be declared in his favor, on the lands embraced in the homestead tract of Jenkins, for the amount of the purchase-money which he had paid, with interest; and for other and further relief, under the general prayer.

A demurrer to the bill was filed by John S. Jenkins separately, and by the other defendants jointly; the former assigning seventeen grounds of demurrer, and the latter fourteen. Among other grounds of demurrer, it was specially assigned, that the original contract between the parties, as reduced to writing and signed on the 3d April, 1871, was void for indefiniteness and uncertainty, and incapable of being specifically enforced; that the deeds afterwards signed showed an entirely different contract, and had no connection with the former contract; that the invalidity of the deed signed by Jenkins and his wife had been established on the trial in the action at law, and the question could not be re-tried in equity; that the facts stated in the bill showed that there had been no valid alienation of the homestead; and that the complainant, so far as he showed any right to relief, had an adequate remedy at law. The chancellor overruled the demurrer, on all the grounds assigned; and answers were then filed by the defendants, in which they set up the defense, among others, that Thomas B. Jenkins was drunk at the

time he entered into the contract with Harrison, and was
thereby incapacitated to enter into a valid contract, and that
Harrison took advantage of his condition.   They also denied
most of the alleged facts showing performance of the contract
on the day the deeds were signed, and they pleaded the
statute of frauds in bar of a specific performance.

The chancellor overruled the plea of the statute of frauds,
but, on final hearing on pleadings and proof, held that the
complainant could not have a specific execution of the con-
tract, because the contract was entire, and there was no valid
alienation of the homestead ; and he further held as follows :
" I think this is a proper case for the rescinding of the entire
contract, and placing the parties *in statu quo* as nearly as
possible.   To do this, it would be proper that the deed
executed by Harrison to Jenkins should be delivered up,
cancelled, and held for naught ; Jenkins to account for the
rents of the lot and store-house thereby conveyed ; the
respondents to select the eighty acres, including the dwelling
and appurtenances thereon situated, which is exempted by
the constitution as a homestead ; also, to refer it to the
register to ascertain the amount, with interest, paid by
Harrison to Jenkins, or to his administrators, embracing the
goods, cash, and indebtedness of Jenkins to Harrison at the
time of his death, deducting from the original sum $1,000,
the agreed value of the house and lot in South Florence ;
also, to ascertain the amount of the rents of the lands selected
as exempt, and the value of the rents of the remaining lands ;
to deduct the rents thus ascertained, from the whole amount
paid by Harrison, and condemn the lands not selected and
exempted as homestead (160 acres) for the satisfaction thereof ;
that Harrison pay the amount ascertained to be due for the
homestead exemption, less the rent of. the house and lot in
South Florence ; that the judgment in the Circuit Court be
enjoined, and, if the administrator *de bonis non* of Jenkins'
estate was a party defendant (?), to enjoin the further prose-
cution of the suit upon the note."

The appeal is sued out by the defendants below, and they
here assign as error the overruling of the demurrers to the
bill, and of the plea of the statute of frauds, together with
the final decree and each part thereof, the assignments of
error being seventeen in all.

J. B. MOORE, and E. A. O'NEAL, for appellants.

W. COOPER, and THOS. H. WATTS, *contra*.   (No briefs on file.)

BRICKELL, C. J.—There were numerous causes of de-

[Jenkins v. Harrison.]

murrer assigned to the original bill by the appellants, which were overruled by the chancellor. We shall notice only such of them as have been insisted on in the argument of counsel in this court. The first is, that the bill proposes to re-open and retry the matters which were tried and decided in the court of law. The suit at law, it is evident, was vigorously defended; the defense addressed mainly to the point, whether there was a delivery of the deed in the life of Jenkins, passing the legal estate to Harrison. The defense was unsuccessful; but the judgment at law, though it was resisted upon legal grounds, is far from precluding the appellee from resorting to a court of equity, for the enforcement of equitable rights, of which the court of law had no jurisdiction.—*Greenlee v. Gaines*, 13 Ala. 198. The bill, so far from proposing to re-open and retry the matters involved in the action at law—so far from drawing in question the correctness of the judgment obtained—when fairly analyzed, admits that the judgment was properly obtained, because the court of law could look only to the legal estate, and not to equities which were superior to it, and binding it and the heirs to whom it had descended. Failing to establish, as a fact, the delivery of the deed, whereby he would have been clothed with the legal estate, Harrison claims independent equities, springing from the contract of purchase,—not as grounds for revising the judgment at law, but as causes for preventing the parties who obtained it from taking advantage of it. The bill presents questions which were not within the jurisdiction of the court of law, which were not presented, and which it would have been vain to have presented for the consideration of that court. Such bills are of frequent occurrence, and are uniformly maintained, if they disclose clear equities, rendering the enforcement of the judgment at law unjust and unconscionable.—*Parker v. Judges*, 12 Wheat. 561.

2. It is insisted that, as it appears from the bill all the purchase-money of the lands has not been paid, a mere general offer to do equity is insufficient; that there should be a specific, explicit offer to pay so much of the purchase-money as is unpaid. When a bill is filed to compel the specific performance of a contract, the complainant, as a general rule, must by the bill submit to perform the contract on his part; because the effect of such submission is to entitle the defendant to a decree, though the complainant should fail to entitle himself to relief in the form prayed by the bill; and the court will not decree performance, except upon the condition, that the party claiming it perform upon his part. 1 Dan. Ch. Pr. 385. The allegation is, however, merely formal: no particular form of expression need be observed in making

[Jenkins v. Harrison.]

it; and it is sufficient, whenever ability and willingness to perform are clearly manifested. It may well be doubted, whether, in a case of this kind, it is material; the party seeking specific performance having on his part performed partially, and being hindered from full performance by the act of his adversary, who, it is evident, would not, if it were tendered, accept further performance.—*Bass v. Gilleland*, 5 Ala. 761; *Elliott v. Boaz*, 9 Ala. 779; *Hatcher v. Hatcher*, 1 McMull. Eq. 311. Without discussing these questions, it is sufficient to say, the bill is not obnoxious to this cause of demurrer. It contains a very clear and complete offer of performance, as the court may direct, and an unequivocal submission to the jurisdiction of the court.

3. We reach now the material point of contention between the parties,—that which, it is obvious from the argument of counsel, is regarded as decisive of the controversy. The question is, whether the averments of the bill,—and these averments are supported by the evidence,—show a contract in writing, or a note or memorandum in writing, of the contract for the sale and conveyance of the lands, signed by Jenkins, which will satisfy the requirements of the statute of frauds.

The 5th subdivision of section 2121 of the Code of 1876 is directed to contracts for the sale of lands, tenements, or hereditaments, or of any interest therein, except leases for a term not longer than one year. It embodies, in substance, the fourth subdivision of the fourth section of the English statute of frauds, 29 Car. 2, c. 3. The present statute differs materially from the English statute, and our former statute of 1803 (Clay's Dig. 254, § 1), which merely declared, that no action should be brought on unwritten contracts for the sale of lands, and contained no exception in favor of such contracts though they may have been partly performed. The statute now proscribes, as void, every contract for the sale of lands, tenements, or hereditaments, or of any interest therein, except leases for a term not longer than one year, unless the agreement, or some note or memorandum thereof, expressing the consideration, is in writing, and subscribed by the party to be charged therewith, or some other person by him thereunto lawfully authorized in writing; or "unless the purchase-money, or a portion thereof, be paid, and the purchaser be put in possession of the land by the seller." The former statute of frauds was not construed as was the English statute. Its requisitions were satisfied, if the agreement was in writing, though the consideration was not expressed; that could be proved by extrinsic evidence.—*Thompson v. Hall*, 16 Ala. 204; *Beall v. Ridgway*, 18 Ala. 117; *Rigby v. Norwood*, 34 Ala. 129.

(23)

[Jenkins v. Harrison.]

The present statute is intended to preclude that construction, and to embody as a mandatory requirement, the expression in writing of the consideration, not leaving it to the uncertainty and infirmity of parol evidence.—*Rigby v. Norwood, supra.* Again, if the contract was in writing, signed by an agent of the party to be charged, verbal authority to the agent was sufficient under the former statute.—*Ledbetter v. Walker,* 31 Ala. 175 ; *Robinson v. Garth,* 6 Ala. 204. Written authority is now an express requirement of the statute. It was in courts of equity, that part performance of unwritten contracts for the sale of lands would withdraw them from the influence of the former statute, upon the ground, that it would be a fraud on the party performing, if the other party were permitted to avail himself of the statute, to avoid performance on his part. The part performance which would withdraw the contract from the influence of the former statute, was that now expressed in the exception to the statute ; when the purchase-money, or a part thereof, had been paid, and the purchaser let into possession by the seller. 1 Brick. Dig. 694, § 798 ; 2 Brick. Dig. 36, § 304.

While these changes have been introduced, the great, controlling purpose of the present, is that of the former statute—the requisition of written evidence of all contracts for the sale of lands. "The meaning of the statute," said Lord HARDWICKE, in *Welford v. Beazely,* 3 Atk. 503, "is to reduce contracts to a certainty, in order to avoid perjury on the one hand, and fraud on the other ; and therefore, both in this court, and the courts of common law, when an agreement has been reduced to such a certainty, and the substance of the statute has been complied with in the material part, the forms have never been insisted upon." In *Norman v. Molett,* 8 Ala. 546, it was said by GOLDTHWAITE, J.: "The object of the statute of frauds is, to protect individuals from having parol agreements imposed on them, against their consent; but it has been uniformly held, not to defeat a parol contract, which is afterwards evidenced by a writing signed by the party sought to be charged with it." The purpose and object of the statute being no more than the requisition of written evidence of the substance of the contract, signed by the party to be charged, so that he may not be subjected to the mischief which could follow from mere oral evidence ; the purpose and object, and the words of the statute, are all satisfied, "whenever there exists, under the hand of the party sought to be charged, a written statement, containing, either expressly, or by necessary inference, all the terms of the agreement—that is to say, the names of the parties, the subject-matter of the contract, the consideration, and the

[Jenkins v. Harrison.]

promise, and leaving nothing open to future treaty. This, therefore, is sufficient to satisfy the statute; and provided this be found, no formality is required; nor does it signify at all what is the nature or character of the document containing such written statement—whether it be a letter written by the party to be charged to the person with whom he contracted, or to any other person, or a deed, or other legal instrument, or an answer to a bill, or an affidavit in chancery, in bankruptcy, or in lunacy."—Fry on Specific Perf. § 344.

It may be conceded, the memorandum of the contract, of date April 3, 1871, signed by the parties, is not sufficiently certain to satisfy the requirements of the statute. The vague and ambiguous expressions, *lot acre*, and that *Harrison gives up all right to garden*, cannot be regarded as a note or memo-randum expressing that the lot in South Florence, on which the store-house was situate, was embraced in the contract of the sale of lands, and was to be taken by Jenkins, at the value of one thousand dollars, in part payment of the purchase-money, and was to be conveyed by Harrison, with covenants of warranty. This part of that memorandum is wholly unintelligible, looking to the memorandum alone. But, whatever of uncertainty, or ambiguity, or unintelligibleness, may be found in that memorandum, is removed by the deeds subsequently executed by Harrison and Jenkins. These deeds are signed by the respective grantors, and their wives, and the execution of them duly acknowledged before an officer having authority to take and certify the acknowledg-ment of conveyances of real estate. They were drawn under instructions given at the same time, to the same person, by the grantors, and were executed and acknowledged by them, with a view to a final consummation and execution of the contract, of which the note or memorandum of April 3, 1871, was the only written evidence until the deeds were executed. Of themselves, the deeds import a bargain and sale of the fee-simple estate in lands, which are particularly described; the sum of the pecuniary consideration, and the bargainor and bargainee, are clearly stated. But it is insisted for the appellants, that, as the deeds were not delivered in the life of Jenkins, but delivery was expressly deferred until the happening of a future event—the completion of the inventory of the goods—which did not occur until after his death, they cannot be looked to as evidence to supply the insufficiencies of the memorandum, or for any other purpose. Whether the deeds ought not to be accepted as taking the place of all former negotiations or writings between the parties touching this contract—whether they are not a later expression of the

contract, and of the ascertainment to the satisfaction of the parties of all that was unascertained when the memorandum was signed—we are not under the necessity of considering. We repeat, the deeds, by their very terms, import a bargain and sale of lands, in fee simple, which are described, upon a consideration clearly expressed, and are evidence of all that could have ever rested in parol. That they were executed after the contract for the sale of the lands had been made, and after the signing of the memorandum, is not matter of objection. After a contract has passed beyond negotiation or treaty—after the minds of the parties have met—after there has been reciprocal assent to all its terms—unless all the negotiations have been conducted in writing, there is, of necessity, a period of time, longer or shorter, when it rests wholly in parol—the period intervening between the conclusion of treaty, the mutual assent of the parties, and the reduction of the terms of the contract to writing. The writing is not the contract—it is no more or less than the evidence of it, which must exist, or the contract is without legal validity or efficiency, and this evidence may be supplied at any time after the contract is completed.—*Lerned v. Wannemacher*, 9 Allen, 412; *Marsh v. Hyde*, 3 Gray, 331; *Williams v. Bacon*, 2 Gray, 387. This, in effect, was the decision of this court in *Norman v. Molett*, 8 Ala. 546, where a purchaser of lands was held bound by a contract of sale signed only by the vendor, but which the purchaser subsequently, by indorsement, transferred to another.

It is certainly true, as is insisted by the appellant's counsel, that delivery is essential to give effect to a deed—as essential as signing, or the attestation of witnesses, or a legal acknowledgment of execution. And it is true, that though signed, attested, or acknowledged, so long as the grantor retains control or dominion over it—so long as he does not part with it, with the purpose that it shall enure to the grantee—title will not pass from him. The concession does not meet the point upon which judgment is to be pronounced. We are not in search of a conveyance of the legal estate in the lands : we are not inquiring whether the grantor has parted with the title to them, and the grantee has become invested with the title. The *gravamen* of the complaint, the necessity for a resort to a court of equity, consists in the fact, that the grantor has not, as he was bound to do by the contract existing between him and the grantee, parted with the legal title ; and it is performance of that contract which is claimed, and is the primary object of suit. It is written evidence of the contract, binding the vendor to performance, for which we are inquiring ; and that, according to the authorities, may

be obtained from any document or instrument signed by the vendor; and it is not necessary that it should have been written, as were these deeds, with the view of furnishing evidence of the contract, and looking to its final consummation.

In the case of *Welford v. Beazely*, 3 Atk. 503, a deed containing the terms of the contract, the contents of which were known to the party, who subscribed it merely as an attesting witness, was received as sufficient evidence to meet all the purposes, and satisfy all the requisitions of the statute of frauds. We need scarcely refer to numerous cases, in which letters addressed to third persons, strangers to the contract, containing the substance of its terms, have been held sufficient to satisfy the requirements of the statute. 1 Sug. Vendors, 140; *Coles v. Trecothick*, 9 Vesey, 234. Whenever a note or memorandum of the substance of the contract, not a signification, or expression, or detail of all its particulars, signed by the party to be charged, is produced, whatever may be its form or character, or whatever may be its operation or validity in courts of law, the words and purposes of the statute are satisfied. The party is shielded from the peril and mischief springing from the frailty and uncertainty of mere oral evidence, resting in the fleeting memory of witnesses; and the court has, over his own signature, clear and satisfactory evidence of the contract it is to enforce.—*Atwood v. Cobb*, 16 Pick. 227. In *Connell v. Buckle*, 2 P. Wms. 243, a *femme*, in the course of a treaty for marriage, gave a bond to her intended husband, that in the event of the marriage she would convey her lands to him in fee; they married, and husband and wife died without issue; specific performance of the contract was decreed to the heir of the husband, as against the heir of the wife, to whom the lands had descended. Lord MACCLESFIELD said: "The impropriety of the security, a bond from a woman to a man whom she intends to marry, or the inaccurate manner of wording such bond, is not material; for it is sufficient that the bond is written evidence of the agreement of the parties, that the *femme*, in consideration of marriage, agrees the man shall have the land as her portion; and this agreement, being upon a valuable consideration, shall be executed in equity."

In *Fowle v. Freeman*, 9 Vesey, 351, the agreement was not signed by the vendor, who subjoined to it a letter, addressed to his solicitor, instructing him to prepare a proper agreement in pursuance of the terms of the agreement he indorsed. The instructions to the solicitor were countermanded, and the vendor refused to carry out the agreement, relying on the statute of frauds: In answer, it was said by Sir WILLIAM GRANT: "The terms are reduced to writing. The whole was

copied out fairly by the defendant, and he signs it.  There is
no doubt, it was a complete agreement so far.  The question
is, whether the whole effect of it is suspended by adding to
it a letter to his attorney, desiring him to prepare a more
formal instrument.  It is impossible that letter could have
such an effect.  If it had, though that formal agreement had
been prepared, he would not have been obliged to sign it.  *
*   *   He is bound by his letter ; by his proposal."

The particular question before us—whether a deed, unde-
livered, may not be sufficient evidence of a subsisting contract
for the sale of lands, satisfying the statute of frauds, and of
which a court of equity will decree specific performance—has
been the subject of adjudication in several of our sister
States.  In *Bowles v. Woodson*, 6 Gratt. 78, the vendor had
prepared and signed a deed, which described the lands and
the parties, and stated the amount and time of payment of
the purchase-money.  He retained the deed in his own pos-
session ; it was, however, accepted and treated as a sufficient
memorandum in writing to satisfy the requirements of the
statute of frauds.—See, also, *Parrill v. McKinley*, 9 Gratt. 1.
A paper writing, signed and sealed by the owner of land, with
blanks as to the name of the bargainee, and left with an agent,
to whom parol authority was given to fill the blanks, though,
after the blanks were filled, incapable of operating as a con-
veyance, was taken and enforced as a contract for the sale of
the lands.—*Blacknall v. Parish*, 6 Jones' Eq. (N. C.) 70.
Deeds not duly recorded, and for that reason invalid as con-
veyances, have in several cases, in Maryland, been regarded as
contracts to convey, and as such enforced.—*Moncrieff v. Golds-
borough*, 4 H. & Mc. 283 ; *Williams v. Mayor*, 6 H. &J. 529.

The question was very carefully considered in *Thayer v.
Luce*, 22 Ohio St. 62, under facts not very dissimilar to the
facts found in this case.  It was the conclusion of the court,
that when the deed was drawn and executed, as part of the
*res gestœ* of the sale, that it was evidence of, and binding as
an executory contract, though not delivered as a conveyance
of title.  So, in *Campbell v. Thomas*, 42 Wisc. 437, it is held
that, if a vendor, who has by parol made sale of lands, exe-
cutes a deed which he deposits as an *escrow*, if the deed con-
tains the terms of the contract of sale—that is, the names of
the parties, the subject-matter and consideration—it is a suffi-
cient compliance with the statute of frauds.—See, also, *Work
v. Cowhick*, 81 Ill. 317.

Without passing beyond the facts of this case, we hold, that
a deed, drawn and executed with the knowledge of both par-
ties, with a view to the consummation of the contract of sale,
which, in itself, and of itself, embodies the substance, though

[Jenkins v. Harrison.]

not all the details or particulars of the contract, naming the parties, expressing the consideration, and describing the lands, though not delivered, and its delivery postponed until the happening of a future event, is a note, or memorandum of the contract, sufficient to satisfy the words, the spirit,' and purposes of the statute of frauds.

We have been referred to the cases of *Parker v. Parker*, 1 Gray, 409; *Merriam v. Leonard*, 6 Cush. 151; *Cannon v. Cannon*, 26 N. J. Eq. 316; *Overman v. Kerr*, 17 Iowa, 485; *Cagger v. Lansing*, 43 N. Y. 550; which, it is insisted, are in conflict with the authorities to which we have referred, and support the broad proposition, that under no circumstances can an undelivered deed operate as a note or memorandum of a contract for the sale of lands. We have examined these cases with care, and they are distinguishable in their facts from the present case. While some of them contain expressions which may indicate support of the proposition advanced by appellants, the reasons given are not convincing or satisfactory; and others seem to touch only the operation of an undelivered deed as a conveyance of title. In *Parker v. Parker*, *supra*, it was said, the deed could not operate as a memorandum in writing stipulating to convey the lands, because it had not been delivered to the grantee. And in others it is said, the deed could not operate as a memorandum of the contract, as it was not written and intended for that purpose. The authorities, ancient and modern, are numerous, supporting the doctrine, that writings, even letters, addressed to third persons, of which the party availing himself as evidence had no knowledge when they were written, and which were not written with any view to the execution, or to furnish evidence of the contract, have been received as evidence to meet the requirements of the statute of frauds, and upon the evidence derived from them, the contract enforced.—*Peabody v. Speyers*, 56 N. Y. 230; *Gibson v. Holland*, L. R. (1 Com. Pleas) 1; *Coles v. Trecothick*, 9 Vesey, 250.

It is to oral evidence of contracts which ought to be reduced to writing, and signed by the party to be charged, and not to written evidence of such contracts, the statute of frauds is directed. Whenever evidence of the contract is found in writing, signed by the party to be charged, which is certain and definite, there is not danger of fraud and perjury, and it is fraud and perjury the statute intends to prevent. The form of the writing is not important, nor are the purposes for which it may have been intended at all conclusive. In *Bailey v. Sweeting*, 9 C. B. N. S. (99 E. C. L.), a letter, in terms repudiating liability, but admitting the making of the contract, signed by the party to be charged, was received as

a memorandum sufficient to meet the requirements of the statute. The purposes of the statute were all met—the contract was shown by writing; the danger of fraud or perjury was avoided; and the court was not in uncertainty as to the contract it was required to enforce. The statute-book contains no more salutary enactment than the statute of frauds. We intend a rigid adherence to its terms and purposes. We would not, if we had the power, add to it exceptions, or relax its operation, to meet the necessities and justice of particular cases. But, when the words of the statute are satisfied—when all its purposes are met—when a contract is in writing, or when there is in writing a note or memorandum of the contract, certain and definite in its terms, signed by the party to be charged, there is all the evidence the statute requires, and it is without application or operation.

When the memorandum of April 3, 1871, is taken and read, as it must be, in connection with the deeds subsequently executed, there is no doubt or uncertainty as to the terms of the contract for the sale of the lands. True, the deeds do not expressly refer to the memorandum; but they were all executed as parts of a single transaction, between the same parties, having reference to the same subject-matter. The rule is general, that several papers, relied on to meet the requirements of the statute of frauds, should on their face indicate a reference to each other.—*Carter v. Shorter*, 57 Ala. 253; *Knox v. King*, 36 Ala. 367. The rule is not absolute, and there are cases in which parol evidence of cotemporaneous facts, and of the circumstances in which the parties were when the writings were signed, will be received to show their connection.—*Thayer v. Luce*, 22 Ohio St. 62; *Salmon v. Goddard*, 14 How. 446; *Beckwith v. Talbot*, 95 U. S. 289. As is said in the case last cited: "There may be cases in which it would be a violation of reason and common sense to ignore a reference which derived its significance from such proof. If there is ground for any doubt in the matter, the general rule should be enforced. But, when there is no ground for doubt, its enforcement would aid, instead of discouraging fraud." The implication of connection between the memorandum and the deeds is almost irresistible, from their mere inspection, and there was no just objection to parol evidence of the cotemporaneous facts, and the circumstances surrounding the parties showing that they were but parts of the same transaction.—Browne on Stat. Frauds, § 350. It is too well settled now to admit of doubt, that when an instrument, intended to operate as a conveyance of lands, is so executed as not to pass the estate, if there be not some statutory provision which will be contravened, equity will, if the consideration has been

paid, enforce it as a conveyance.—*Wadsworth v. Wendell,* 5 John. Ch. 224.　Upon kindred reasoning, and to accomplish the purposes of justice and the intention of the parties, these deeds, though undelivered, should be enforced as contracts for conveyances.

4. There is no room for the imputation of any unfairness to Harrison in these transactions; nor is there such inadequacy of consideration as would justify a rescission of the contract, or the refusal of specific performance.　Nor is there sufficient evidence that during the negotiations, or when the writings were executed, Jenkins was in a state of intoxication affecting his capacity to contract, or casting suspicion upon contracts made with him.　Taking the whole evidence, there is a contract shown by several writings, subscribed by the party to be charged, certain and definite in all its parts, founded upon an adequate consideration, performed by the vendee to such an extent that serious, if not irreparable injury, must result if it is not enforced.　It is capable of full performance, but for reasons to be stated presently, and specific performance of it in a court of equity would be as much a matter of course and of right, as the recovery of damages for its breach in a court of law.—1 Story's Equity, § 751.

5. But, while we hold the instruments intended to operate as deeds, though not perfected by delivery, and thereby becoming conveyances of the legal estate, are writings evidencing the contract, avoiding the operation of the statute of frauds, their sufficiency for the alienation of the homestead presents another and different question.　The constitution of 1868, of force when this transaction occurred, like the present constitution, declared that no mortgage, or other alienation of the homestead, if the owner thereof was a married man, should be valid, "without the voluntary signature and assent of the wife to the same."　It is in this court a settled question, that a mortgage, or other alienation of the homestead of a husband, whatever may be its form, to which the voluntary assent of the wife is not manifested by her signature, in some mode appointed by law, is invalid for any purpose.　It may operate upon other lands; but, as to the homestead, it is void—it is a nullity.　The constitution refers to a mortgage, or to some other mode of alienation, by which the title is transferred; to legal conveyances, not to writings which import only a contract to convey, which are but the incipiency of a complete alienation and transfer of title.　It is not to such writings it is contemplated the wife shall yield her assent and give her signature, but to the act and instrument which operates to transfer the estate.　The association of the words, *mortgage or other alienation,* is a plain indication that the alien-

[Donegan v. Davis.]

ation, other than mortgage, which is contemplated, is an alienation of like kind with a mortgage; an alienation equally operative to pass the legal estate, not mere contracts to alienate. If to such instruments the wife should give her voluntary assent, and manifest it by her signature, there would remain to her the *locus penitentiæ.* When the contracts are to be performed, she could withhold her signature and assent, and the courts would be powerless to compel her to performance.— *Waddell v. Weaver,* 42 Ala. 293 ; *Wilkinson v. McBryde,* 29 Ala. 662. The instrument to which the wife here gave her signature and assent, though in form an absolute conveyance, was not delivered in the life of the husband, and, for the want of delivery, remains only as an instrument of evidence of the contract, binding the husband to convey. It is, of consequence, not the instrument of alienation to which the constitution requires the voluntary assent and signature of the wife. There is, therefore, no error in the decree of the chancellor that the homestead is unaffected by the contract—that it remains as if it had not been the purpose of the parties to embrace it.

There is no error in the record, of injury to the appellants, and the decree is affirmed.