# White v. Breen.

*Action to recover Damages for Breach of a Contract for Sale of Land.*

1. *Contract for sale of land; what necessary to validity of contract under statute of frauds.*—Under the requirements of the statute of frauds (Code, § 1732), that all contracts for the sale of land must be in writing, the form of the writing is immaterial, and the contract may be evidenced by one or more writings, or may be shown entirely by written correspondence; and whatever form the agreement may assume, if the writing or writings, viewed as a whole, constitute in essence and substance, upon their faces, a note or memorandum in writing, subscribed by the party sought to be charged, or his agent lawfully authorized thereunto in writing, showing who the contracting parties are, the subject matter of the sale and the consideration, the statute is satisfied.

2. *Same; same; when shown by correspondence.*—When a contract for the sale of land is sought to be established by letters and writings containing the negotiations between the parties, and the culmination of these negotiations in an agreement of sale, it is not essential that the party charged should have subscribed each paper forming a link in the chain of evidence; but if the several writings, when viewed in the light of the situation and circumstances of the parties at the time they were written, upon their faces clearly relate to and connect themselves with each other, and their contents when adjusted and adapted to each other according to their reasonable and practical import, disclose the names of the contracting parties, and show the intention of such parties, the subject matter of the sale and the consideration therefor, and it further appears that all this received the sanction of the subscription of the parties sought to be charged, or some person by him thereunto lawfully authorized in writing, the statutory requirements in reference to subscription, as well as to all other particulars, are met and sufficiently complied with.

3. *Same; same; not necessary for one writing to refer to the other in express terms.*—The rule declared above does not necessarily require the express reference in one document to another, or in each of them to all the others; but if all the writings adduced to establish the contract, when viewed together in the light of the situation and circumstances of the parties at the time they were written, show unmistakably that they relate to the same matter and constitute the several parts of one connected transaction, so that there can be no other reasonable conclusion, from the evidence thus afforded, than that they were written with reference to those concurrent or preceding, there

is such a reference of the one to the other as satisfies the rule, although there is no reference in express terms.

4. *Same; same; applicability to creation of authority to sell land.*— The rules of law above announced, as to the form of the contract for sale of land, and by which several papers may be considered as relating to one general transaction and as having connection with each other, apply with the same force to the creation of a power of attorney to sell lands, as they do to the note or memorandum of the contract of sale required by the statute of frauds; but in other respects, the characteristics of the power of attorney to sell land and a note or memorandum of a contract for the sale of land are essentially different, and controlled by different principles

5. *Same; application of the facts in this case.*—The owner of land requested a certain person by a letter to find a purchaser for his property in a certain city. Said person answered that he was not a real estate agent, but if so desired, he would place the property in the hands of an agent. In response to this offer, the owner asked that the services of the agent be secured to sell his property; and thereupon said person wrote to the owner that in pursuance of his instructions he had placed in the hands of a certain agent the property, particularly describing it. The owner of this property owned no other property in that particular city. Shortly after having the property placed in his hands for sale, the agent wrote to the owner, saying that he had a customer who would "take the property," giving in his letter the location of said property on the avenues of the city. In response to the letter of the agent, the owner wrote a letter authorizing him to sell. *Held:* That although there was no express mention of the correspondence between the owner of the property and the person who had placed the property in the hands of the agent, by reason of the references to that precedent correspondence in the letters of the agent, such correspondence must be considered in connection with that between the agent and owner, and that when the two are considered together, there is an identification of the property authorized to be sold, and there is established a power of attorney upon the agent to make said sale.

6. *Power of attorney to sell land; when special and limited.*—A power of attorney to sell a particular lot to a particular person at a specified price and on specified terms is special and limited power, as distinguished from general authority to sell.

7. *Same; when sufficient memorandum of sale.*—Where, as a result of communications between the owner of property and an agent for its sale, the agent is duly authorized in writing, signed by the owner, to sell certain property at specified terms to a particular person, whose name does not appear in the writings, and the agent, in accordance with the authority to sell, makes a sale, and in acknowledgment of a payment of a part of the purchase money executes a written receipt to said person, setting out his name, this receipt, together with the prior writings, constitute a sufficient note or memorandum of the sale

[White v. Breen.]

to satisfy the requirements of the statute of frauds.

APPEAL from the Circuit Court of Colbert.

Tried before the Hon. H. C. SPEAKE.

This was an action brought by the appellant, Mary T. White, against the appellee, Albert Breen, to recover damages for the alleged breach of a contract of sale of certain lots. The material facts of the case are sufficiently stated in the opinion.

After the introduction of the letters constituting the correspondence between the defendant Breen and Ruffin, and between Moses and Breen, (which letters are set out in the opinion), the defendant having objected to such correspondence at the time it was offered, moved to exclude each of the writings from the jury, on the following grounds: 1st. The correspondence fails to show that there was any agreement in writing or memorandum thereof expressing a consideration for a sale, subscribed by Albert Breen, or by any other person by him thereunto lawfully authorized in writing. 2d. The correspondence fails to show any agreement for a sale of the property referred to. 3d. There is no written authority to A. J. Moses to act for Albert Breen either in making the sale or receiving the purchase money. 4th. There is contained in said correspondence no description of the property alleged to have been sold. 5th. Because the said testimony is irrelevant, and fails to take the contract sued on without the statute of frauds. The court sustained this motion of the defendant, and excluded the writings constituting this correspondence, and to this ruling the plaintiff duly excepted.

Upon the introduction of all the evidence, the plaintiff requested the court to give to the jury the following written charges: (1.) "If the jury believe all the evidence in this case, they should find for the plaintiff." (2.) "If the jury believe from the evidence that Breen, the defendant, authorized A. J. Moses to sell the property in Sheffield, Alabama, described in the complaint at a sum not less than $5,000, and the said Moses, as such agent for the defendant, found a purchaser in the plaintiff, and stated the terms of plaintiff's offer to the defendant by letter to the defendant, to which the defendant replied in writing accepting the offer, then the jury should find for the plaintiff." The court refused to give each of

11

these charges, and to the refusal to give them the plaintiff duly excepted. And the plaintiff likewise excepted to the giving of the following charge as requested by the defendant: "If the jury believe the evidence in the case, they will find for the defendant."

There were verdict and judgment for the defendant. The plaintiff appeals, and assigns as error the rulings of the court upon the evidence, and upon the charges given and refused.

ROULHAC & NATHAN, for appellant.—1. The fact that the agent for the sale of the property involved in this suit was selected by another than the owner of the property is immaterial. This selection was at the request of the owner. It was competent for the owner to select an agent for the sale of his property through another person.—Mechem on Agency, §§ 184, 185, 196, 197; *Gray v. Murray*, 3 Johns. Chan. 182; *Bodine v. Ins. Co.*, 51 N. Y. 122; *Van Schoick v. Ins. Co.*, 68 N. Y. 437; 1 Lawson Rights, Rem. & Prac., § 28.

2. In order to make a binding contract for the sale of lands by the statute of frauds, there must be an agreement or some memorandum thereof in writing, expressing the consideration and subscribed by the party to be charged therewith, or some other person duly authorized in writing. The statute will be satisfied by writing, however informal, which contains, either expressly or by necessary inference, all the terms of agreement; that is to say, the names of the person, the subject matter of the contract, the consideration, the premises, and the signature of the party sought to be charged The correspondence in this case, which was signed by the owner of the property, sufficiently designated the seller, and in the letter of December 16, 1890, Moses the agent, tells the defendant Breen, that the purchaser is Mrs. Mary T. White. This is a sufficient designation of the other party.—*Grafton v. Cummings*, 99 U. S. 100. There was a sufficient description of the property in the correspondence. Breen refers to his property in his letter, as "my property in Sheffield, Alabama," and it is shown that the only property he then owned was that contracted to be sold the plaintiff. There was further identification in the letter of Moses to Breen in December, 1890, in which he tells him that he has a customer who would

[White v. Breen.]

"take the property, viz.: lot on Montgomery avenue, and the two lots and improvements on Annapolis avenue." This was a sufficient description of the property It is not essential that the writing should contain a particular description of the subject, but must contain some statements by which the property can be completely identified.—*Smith v. Freeman*, 75 Ala. 285 ; *Scanlon v. Geddes*, 112 Mass. 15 ; *Doherty v. Hill*, 144 Mass. 465 ; *Jenkins v. Harrison*, 66 Ala. 345 ; *Beckwith v. Talbot*, 95 U. S. 289 ; *Clements v. Pearce*, 63 Ala. 292; *L. & N. R. R. Co. v. Boykin*, 76 Ala. 565 ; *Guilmartin v. Wood*, 76 Ala. 210 ; *Meyer v. Mitchell*, 77 Ala. 312 ; *Black v. Pratt C. & C. Co.*, 85 Ala. 510 ; *Chambers v. Ringstaff*, 69 Ala. 140 ; *Morris v. Robinson*, 80 Ala. 291 ; *Gaston v. Weir*, 84 Ala. 193 ; 2 Devlin on Deeds, § 1012 ; *Pennington v. Flock*, 93 Ind. 378 ; *Smiley v. Fries*, 104 Ill. 416 ; Waterman on Spec. Perf., § § 237, 238 ; *Phillipps v. Hooker*, Phil. N. C. Eq., 193 ; *Mead v. Parker*, 115 Mass. 413 ; *Simmons v. Spruill*, 3 Jones Eq. 9.

3. There was a sufficient subscription of the contract by the parties sought to be bound. The contract may be established by special writings, such as letters or telegrams, and the signature to them is sufficient.— 8 Amer. & Eng. Encyc. of Law, 716–8 ; *Jenkins v. Harrison*, 66 Ala. 357 ; *Beckwith v. Talbot*, 95 U. S. 289 ; *Coles v. Trecothick*, 9 Vesey, 250 ; *Johnston v. Jones*, 85 Ala. 286 ; *Benziger v. Miller*, 50 Ala. 206 ; *Lakeside Co. v. Dromgoole*, 89 Ala. 508 ; *Gibson v. Holland*, 1 L. R. 1 C. P. ; *Wood v. Davis*, 82 Ill. 311 ; *Moss v. Atkinson*, 44 Cal. 3 ; *Little v. Dougherty*, 17 Pac. Rep. 292 ; *Moses v. McClain*, 82 Ala. 375 ; *Linn v. McLean*, 85 Ala. 255.

4. Where the trade is shown in part by several writings, letters or other papers, and where an agreement was reached through an offer and subsequent discussion and final acceptance, the whole correspondence, one letter containing one part, a telegram another, and some other writing, perhaps, still others—it is proper to consider the whole correspondence, and a decision of whether an agreement is reached or not, is impracticable otherwise.—*Jenkins v. Harrison*, 66 Ala. 357 ; *Benziger v. Miller*, 50 Ala. 206 ; *Williams v. Morris*, 95 U. S. 444.

5 The written authority to sell, carries with it the power to bind his principal, and do all necessary things to carry out the object in view. Thus it has been held,

[White v. Breen.]

that while an agent to sell merely, without power to convey, may not execute a conveyance in his principal's name, he is, by virtue of the power to sell, authorized to make a valid contract for the sale under a written appointment, as the only means of exercising his power.— *Lawrence v. Taylor*, 5 Hill. (N. Y.) 107 ; *Lyon v. Pollock*, 99 U. S. 668 ; *Valentine v. Piper*, 22 Pick. 85, 33 Amer. Dec. 719 ; *Hemstreet v. Burdick*, 90 Ill. 444 ; *Haydock v. Stow*, 40 N. Y. 368, 1 Amer. & Eng Encyc. of Law, 360.

6.    If this be so, the papers show an undisputed and indisputable sale by Moses.    His letters to Breen, and his receipt to Mrs. White show all the elements of a contract for sale, valid by the statute.    A receipt, by itself, given for a part payment of the purchase money may constitute a valid memorandum.–Waterman on Spec. Perf., § 235 ; *Westervelt v. Matheson*, 1 Hoff. Chan. 38. Of course, if such receipt is the only instrument in the case, it must, in and by itself, contain all the necessary ingredients of an agreement ; but, if it contains but a part of them, and the others are to be found in other writings of the agent or principal, the receipt answers for such of them as it does contain.—*Jenkins v. Harrison*, 66 Ala. 357 ; *Williams v. Morris*, 95 U. S. 444 ; Waterman on Spec. Perf., § 245 ; *Williams v. Bacon*, 2 Gray, 387.


THOMAS SEAY, *contra*.—1.    The statute of frauds finds its chief value in excluding oral testimony of certain solemn contracts.    When the memorandum or writing is, itself, incomplete, it can not derive aid from any other writing unless the memorandum refers to the other writings.    Oral evidence can not be received to connect the two, or to supply the missing link.—*Knox v. King*, 36 Ala. 367.

2.    To take the contract without the influence of the statute of frauds, the written statements must contain, either expressly or by necessary inference, all the terms of the agreement ; that is to say the names of the parties the subject matter of the contract, the consideration, and the promise, and leave nothing open to future treaty.—*Jenkins v. Harrison*, 66 Ala. 345 ; *Phillips v. Adams*, 70 Ala. 376 ; *Carter v. Shorter*, 57 Ala. 253 ; *Mc-*

*Kibbon v. Brown*, 14 N. J. Eq. 13; *Adams v. McMillan*, 7 Port. 73.

HEAD, J.—The question in this case is whether the writings appearing in evidence constitute such a memorandum of a contract of sale of the lots by Breen to Mrs. White as satisfies the statute of frauds. Breen was the owner of lot numbered 4 in block numbered 72, situated on Montgomery Avenue, and lots numbered 4 and 5 in block numbered 96, situated on Annapolis Avenue, in the city of Sheffield, Colbert county, Alabama. He owned no other property in that city. On November 6, 1890, he wrote from New Kingston, Pa., to W. H. Ruffin, Esq., of Sheffield, as follows: ''Would you be kind enough to hunt up a purchaser for *my property in Sheffield, Ala.* I will sell at a reasonable price—hoping to hear from you on the subject soon, I remain, Yours Truly, Albert Breen.'' Ruffin replied that he was not a real estate agent, but if he, Breen, desired, he would secure the service of an agent in whose hands he would place the property for sale; to which he received the following reply, written from New Kingston, November 13, 1890: ''Your favor of the 8th came to hand last evening. I wish you would please secure the services of some good reliable person to sell my property at any sum above five thousand dollars, $5,000, nothing less. * * * Please start the sale as soon as you can, and oblige, Yours Truly, Albert Breen.'' Thereupon, Ruffin placed the above described lots, which, as we have said, were the only property owned by Breen in Sheffield, in the hands of A. J. Moses, a real estate agent, and so notified Breen by letter. In the latter part of November, 1890, Breen came to Sheffield, when Ruffin introduced him to Moses as the person in whose hands he had placed the sale of the property. Thus, the writings, to this point, without the aid of extrinsic evidence, place Breen's property, in Sheffield, Ala., by his act, in the hands of Moses, as his agent, for the purpose of finding a purchaser.

On December 9, 1890, Moses wrote Breen, from Sheffield, as follows: ''I have a customer who will take *the* property, viz.: lot on Montgomery Ave., and the two lots and improvements on Annapolis Ave., for $5,000 at $1,666.66 payable January 1st, 1891, balance in 12 months. He will, if you desire, pay down $100, to close

trade, this sum to be deducted from cash payment. Reply at once. Yours etc. A. J. Moses.'' To this letter Breen replied as follows : ''Birmingham, Ala. December 14th, 1890. A. J. Moses, Esq., Sheffield, Ala. I returned this morning from Greensboro, Ala., where I have been on business. Your letter of Dec. 9th was handed to me on my arrival here this morning. I regret very much indeed that I was not here when it came. I will accept the trade if one hundred dollars are paid down as a security—hope you can make a trade with same party. Hoping to hear from you soon on the subject, Address as before. Very Truly, Albert Breen.'' To which Moses replied as follows : ''Sheffield Ala. Dec. 16th, 1890. Albert Breen, Esq., Dear Sir :—I have closed with Mrs. W. S. White for the sale of the two houses on Annapolis Avenue and lot on Montgomery Avenue for $5,000 as follows : $100 cash, $1,566.66 payable January 1st, 1891., $3,333.33 payable in twelve months. I wish you to have deed forwarded so as to execute new deeds and mortgage. The former will have to be sent to Mrs. Breen for her signature, so you had better not delay forwarding papers to my address, and state where new deeds will reach you for signature. I hold $100 to confirm trade. Very Truly, A. J. Moses.'' To this, Breen replied, by telegraph, as follows : ''Birmingham, Ala. Dec. 17th, 1890. 9 :45. To. A. J. Moses. Yours all received and contents noted. Have sent for deeds, shall forward as soon as received. Let me know if mortgage is to bear interest. See if Ruffin got letter for me at Cleveland House, and forward the same. Albert Breen.'' To which Moses replied by letter, as follows : ''Sheffield, Ala. Dec. 17, 1890. Mr. Albert Breen. Dear Sir :—Your telegram received. Mr. Ruffin forwarded your letter yesterday. While nothing was said in reference to interest on deferred payment, it is customary and I so understand it, as custom in every case shows deferred payments bear interest, particularly where property is improved and producing an income. Very Truly, A. J. Moses.'' On the next day, December 18th, Breen, by a message to Moses, through a letter to Ruffin, repudiated, or attempted to repudiate the trade, on the ground that his wife would not sign at such a low figure, to which Moses replied by letter on the 20th, insisting that he, Breen, was bound, and urging him to carry out the contract. On the 26th, he wrote Moses ex-

pressing a willingness to close the trade by executing the
papers and accepting a mortgage, but exacting eight per
cent interest on the deferred payments, to which he
thereafter adhered. Mrs. White refused to submit to
this exaction of interest, and brought this action to re-
cover for the alleged breach of agreement to sell. When
Moses made the bargain with Mrs. White, relied on, she
paid him $100 in cash, and he executed to her a receipt
as follows: "Sheffield, Ala., Dec. 15th, 1890. Received
from Mrs. Mary T. White one hundred dollars on account
of purchase of two houses and lots on Annapolis Avenue
and one lot on Montgomery Avenue belonging to Albert
Breen. A. J. Moses, agent."

The foregoing are the material facts. Upon them, two
questions arise: 1st. Did Moses, as agent of Breen, make
a contract of sale binding upon his principal? 2d. Did
Breen himself make such a contract binding him to its
performance? The first question subdivides itself
into two inquiries, viz.: (1.) Was Moses lawfully au-
thorized, in writing, by Breen to make the contract?
(2.) If so, do the writtings show that, in pursuance of
such authority, he made a contract evidenced by some
note or memorandum thereof, in writing, expressing
the consideration, and subscribed by him? The princi-
ples of law growing out of our statute of frauds, in re-
ference to contracts for the sale of land, or any interest
therein, have been often and fully discussed in our ad-
judications. It is well settled that the form of the writ-
ing required by the statute is not material. The con-
tract may be evidenced by one writing, or more. It may
be shown entirely by written correspondence. What-
ever form the agreement may assume, if the writing or
writings, viewed as a whole, constitute, in essence and sub-
stance, upon their face, a note or memorandum in writ-
ing, subscribed by the party sought to be charged, or his
agent lawfully authorized in writing, showing who the
contracting parties are, the subject matter of the sale
and the consideration, the statute is satisfied.—*Jenkins
v. Harrison*, 66 Ala. 357; *Carter v. Shorter*, 57 Ala. 253;
*Knox.v. King*, 36 Ala. 369. In cases of single instru-
ments, their sufficiency is generally of easy determina-
tion. Greater difficulties arise when, in cases like the
present, the required evidence of the contract is sought
to be produced by the adjustment and adaptation to each

other of several letters and writings containing the nego-
titations of the parties, and the supposed culmination of
these negotiations in a binding agreement of sale. In
cases of this character, it is certainly not essential that
the party charged should have subscribed each paper
forming a link in the chain of evidence. If the several
writings, upon their faces, viewed in the light of the
situation and circumstances of the parties at the time
they were written, clearly relate to, and connect them-
selves with, each other; and when their contents are ad-
justed and adapted to each other, according to their
reasonable and practical import, evolving, in form and
order, the manifest sense and meaning of the parties,
there appears to have been clearly made known the
names of the contracting parties, the subject matter of
the sale, and the consideration; and if it appears that
all this has received the sanction of the subscription of
the party sought to be charged. or some person by him
thereunto lawfully authorized in writing, the statute re-
quirement in reference to subscription, as well as all
other particulars, is met. We said the several writings
must, upon their faces, clearly relate to, and connect
themselves with, each other. The rule, however, does
not necessarily require express mention in one document
of another; or in each, of all the others; and this state-
ment, we conceive, does not modify the rule, when
properly interpreted, as it is stated in *Knox v. King*, 36
Ala. 367, viz.: "When the memorandum in writing is
itself incomplete, it can not derive aid from another
writing unless the memorandum refer to the other writ-
ing." And that, "Oral evidence can not be received to
connect the two or to supply the wanting link." This
last rule is subject to the exception which obtains gene-
rally in the construction of written contracts, that the
situation and circumstances of the parties may be looked
to, when necessary, to aid in arriving at the meaning of
what they have written. An explanation of these rules
will be found in *Jenkins v. Harrison*, 66 Ala. 357, *supra*.
We are of opinion that when all the writings adduced,
viewed together, in the light of the situation and circum-
stances of the parties at the time they were written, show
unmistakably that they relate to the same matter and
constitute several parts of one connected transaction,
so that the mind can come to no other reasonable con-

[White v. Breen.]

clusion, from the evidence so afforded, than that they were each written with reference to those concurrent or preceding, then, there is such a reference of the one to the other as satifies the rule, although reference in express terms does not appear. The rule is one founded in reason; and when, as practical men, we look at the writings and see, inhering in them, evidence which entirely satisfies the mind that they all relate to one general transaction, there is no reason why they should not be so considered. There is in such case a direct reference of the one to the other within the meaning of the law. The application of the principle to the facts of this case will illustrate our meaning. The case of *Beckwith v. Talbot*, 95 U. S. 289, aptly illustrates it.

These rules of law relating to the form of the agreement, and by which several papers may be considered as bearing a connection with each other, apply as well to the creation of a power of attorney to sell lands, as to the requisite note or memorandum of the contract of sale; but, in other respects, the characteristics of the two—the power of attorney and the note or memorandum of the contract—are essentially different, and controlled by different principles. Unlike the former, the present statute requires the authority of an agent to subscribe the note or memorandum of the contract for the sale of land for his principal to be conferred in writting. No form or method of execution of the power of attorney is prescribed. It may be in any form clearly showing the agent's authority, and be executed according to any recognized common law method of executing written instruments. The power may be general, to sell any lands of the principal, to any purchaser, upon any terms; or it may be partly general and partly special or limited, as to sell particular land, to any purchaser, on any terms, or particular land to any purchaser on particular terms; or it may be entirely special, as to sell particular land, to a particular purchaser, on particular terms. In either case, the agent, keeping within the scope of his authority, may make the contract and execute the necessary written evidence binding his principal to its performance.

We think it is not to be denied, that, if the lands were sufficiently identified, Breen did execute to Moses a power of attorney to sell these lands. Let us settle first whether the identification was sufficient. The power to

sell is contained in the letter of Moses to Breen of December 9, 1890, and Breen's direct reply thereto, expressly referring to it, of December 14th, 1890. These letters are above set out. In them, the only description given is, "the property, viz. lot on Montgomery Ave., and the two lots and improvements on Annapolis Ave." This, unaided is clearly insufficient. Is it rendered sufficient by other writings? Here, the principles herein discussed, touching the manifestation of agreements by several writings and their reference to, and connection with, each other. are applicable. We have seen, that on November 6, 1890, Breen wrote to Ruffin requesting him to hunt him up a purchaser for *"my property in Sheffield, Ala."* Ruffin replied that he was not a real estate agent, but that if he, Breen, desired, he would secure the service of an agent in whose hands he would place *"the property"* for sale. Breen replied on November 13th, 1890, expressly referring to Ruffin's letter, saying, "please secure the services of some good reliable person to sell my property," &c. Thereupon Ruffin wrote to Breen, informing him that pursuant to instructions, he had placed in the hands of A. J. Moses lot numbered 4 in Block numbered 72 and lots numbered 4 and 5 in Block numbered 96, the former being on Montgomery Avenue, the two latter on Annapolis Avenue, all in the city of Sheffield, county of Colbert, and State of Alabama. The bill of exceptions leaves no room for any other interpretation than that this letter of Ruffin to Breen described the property he had placed in the hands of Moses as above stated. It was also proved that Breen was so circumstanced, at that time, that he owned no other property in Sheffield. Following close upon this correspondence, came the letter of Moses to Breen, of December 9th, saying he had a customer who would take, "the property, viz., lot on Montgomery Ave., and the two lots and improvements on Annapolis Ave.," &c. ; to which Breen replied, conferring authority to sell. This letter of Moses does not expressly refer to the Ruffin correspondence, but in pointing out the property to which it relates, he employs the definite article, implying, beyond all doubt, some precedent matter understood by both, which rendered a more definite reference unnecessary. It also gives the avenues on which the lots are situated. It is

[White v. Breen.]

impossible, we think, for the mind to conclude that this letter did not have direct reference to the precedent correspondence between Breen and Ruffin, though express mention of that correspondence was omitted. We accordingly hold that the correspondence with Ruffin properly enters into the make up of Moses' power of attorney, and, with the other letters, renders sufficient the identification of the property authorized to be sold. The result would be the same if the last letter of Ruffin to Breen had not minutely described the lands as above set forth. In that case, the description afforded by bringing together the several letters, would be, substantially: "The three lots in Sheffield, Alabama, belonging to Albert Breen, viz., the one located on Montgomery Avenue and the two on Annapolis Avenue"—the proof being that Breen then owned no other property in Sheffield than the lots in question. This is a sufficient description. See authorities cited on brief of appellant's counsel. What then was the nature and effect of this power of attorney? It was of the class we designated as entirely special and limited. The authority was to sell the particular lots, to the particular customer, at a specified price and on specified terms. The judgment and discretion of Breen, in respect of every element of the bargain, were expressed in the power, and were to be exercised by the agent. Indeed, this power of attorney, save in a single particular, contains within itself a statement of every element of the contract requisite to a sufficient note or memorandum, under the statute of frauds. It fails only, in that the name of the purchaser is not stated. She is pointed out to the agent, not by name, but as the customer who had proposed to buy. This, as we have shown, while insufficient as evidence of the contract because it does not disclose the name of the purchaser, was sufficient for the purposes of Moses' power to sell to Mrs. White—she being in fact the customer referred to. It authorized him to close the bargain, and execute to her the necessary note or memorandum under the statute; and if the receipt he executed to her had set forth the lands, the price and the terms of sale, there could be no further question of its binding force upon Breen, the principal. But, it omitted these essentials; and the question arises whether they are supplied by reference to the power of attorney which sets them forth.

[White v. Breen.]

The receipt itself discloses all other essentials, viz , the names of the contracting parties. The receipt was subscribed by the agent thereunto lawfully authorized in writing. The power of attorney was subscribed by Breen himself. The two combined express all the elements of the contract required by the statute. Neither, of itself, does. The principles of law growing out of that provision of the statute under consideration, as we have already remarked, have been often discussed in this court. We can go to no better source of information on the subject than the elaborate and able opinion of Chief Justice BRICKELL, in *Jenkins v. Harrison*, 66 Ala. 357, *supra*. We will not enlarge this opinion by reproducing what he there said. We extract from it, and from the books at large, that the purpose for which a note or memorandum relied on was made, is not always controlling. "Writings, even letters addressed to third persons of which the party availing himself as evidence had no knowledge when they were written, and which were not written with any view to the execution, or to furnish evidence of the contract, have been received as evidence to meet the requirements of the statute of frauds, and upon the evidence derived from them the contract enforced." Undelivered deeds ; deeds delivered in escrow, may furnish the necessary evidence of the contract. In short, all that the law demands is a written statement of the essential elements of the contract over the signature of the party sought to be charged, or his duly authorized agent, so that the establishment of the contract be not left to oral evidence. When an agent contracts, for his principal, with another, under written authority, the writing, in contemplation of law, is before the parties at the time the contract is made. They are bound to know its contents. The contract derives validity from the power. If the agent executes written evidence of the contract, the power of attorney enters into, and forms a part of it. The two constitute a unity and are inseparable. Under the power, in the present case, Moses was authorized to execute a full and complete note or memorandum, binding Breen. That can not be disputed. If so, then he was authorized to execute such a note or memorandum as, under the particular circumstances, was necessary to the production of full written evidence of the contract, under the statute. Hence,

[Andrews *et al.* v. Ford.]

when called upon to act, he found that Breen had, himself, defined, over his own signature, the vendor, the land, the price and terms of sale, in a writing which must needs enter into and become part of any writing he, the agent, could execute; thus furnishing all the evidence of what the contract was, except the name of the purchaser; and, being thereunto duly authorized. in writing, he executed the receipt supplying that deficiency. We have no doubt that this was a full compliance with the statute. Full legal evidence of the contract was thereby provided.

We stated for decision, the second question, viz.: Whether Breen did not himself conclude the contract of sale after Mrs. White was reported to him as purchaser? We deem it, however, unnecessary to decide it, as the views we have announced are evidently conclusive of the plaintiff's right of action.

Reversed and remanded.